In the Matter of the Estate of EDITH VAUGHAN, Deceased.

Surrogate's Court, Kings County, October 27, 1932.

*George A. Arkwright,* for the petitioner.

*Wrenn & Schmid* [*Henry J. Logan* of counsel], for the estate of Herbert F. Vaughan.

WINGATE, S. It is perhaps not unnatural, in an era of intense individual and community activity like the present, that there should be an interesting dimunition of interest in the historical bases of present existence and rules of conduct. It is nevertheless true, in respect to substantially all legal rules now existing, that a study of their development will throw great light on their proper scope and interpretation.

It would be difficult to find a subject in which this is more true than in that of so-called savings bank trusts, a problem in connection with which is the issue in the present discovery proceeding.

Since the decision of the Court of Appeals in *Matter of Totten* (179 N. Y. 112), it has been the growing practice of the bar, and, to a certain extent, of the bench, to treat questions relating thereto as if the pronouncements by the court in that case constituted a new statutory enactment, eliminating from pertinency all previous decisions of the courts relating to the subject. That such was not the purpose or intent of the Court of Appeals in the language employed in the decision seems obvious from its careful review of previous precedents in the opinion, and its statement, prefaced to the frequently quoted rule of thumb therein deduced, that " after much reflection upon the subject, guided by the principles established by our former decisions, we announce the following as our conclusion." The obvious tenor of the decision is merely a restatement of the law and a reconciliation of previous pronouncements. Any interpretation of this statement, therefore, should be made in the light of the principles announced in the previous decisions cited.

The rule then adduced by the court has been so frequently quoted that any court or attorney having much to do with questions of this type is entirely familiar with its language. It may well be doubted, however, whether any considerable proportion of counsel who litigate its meaning have ever troubled to analyze the relationship of the language employed to the previous decisions cited. In the hope of shedding some light where too much unnecessary darkness still remains, the court will attempt such an analysis.

The rule stated by the court reads, beginning at page 125: " A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance,

the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

With extremely slight changes in order and wording, this statement is capable of subdivision into five distinct propositions of law, the relevancy of any one of which to a given case will depend on the particular state of facts presented for decision. These five principles are as follows:

1. "*A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor.*"

This position is derived from the following cases cited in the opinion: *Mabie* v. *Bailey* (95 N. Y. 206) where the court says (at p. 210): " The character of such a transaction, as creating a trust, is not conclusively established by the mere fact of the deposit." *Beaver* v. *Beaver* (117 N. Y. 421, at p. 428): " No  *  *  * trust  *  *  * can be implied from a mere deposit by one person in the name of another." (At p. 430): " A deposit in a savings bank by one person of his own money to the credit of another  *  *  * does not,  *  *  * of itself, without more, authorize an affirmative finding that the deposit was made with " an intent on the part of the depositor to give the money to the other. (See, also, headnote to *Cunningham* v. *Davenport,* 147 N. Y. 43, cited in full in *Matter of Totten, supra,* 123.)

2. " *It is a tentative trust merely, revocable at will until the depositor dies,*" *unless some additional act or event transforms it into an absolute one.* This position is an inevitable consequence of that numbered " 1," *supra,* and is based upon the same authorities.

3. " *In case the depositor dies before the beneficiary* " *without having performed some additional act in relation to the deposit,* " *the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.*"

This proposition is taken direct from *Cunningham* v. *Davenport* (147 N. Y. 43), where the court, after a review of earlier decisions, says (at p. 47): " The doctrine laid down by this court in the previous cases amounts to this, that the act of a depositor in opening an account in a savings bank in trust for a third party, the depositor retaining possession of the bank book and failing to notify the beneficiary, creates a trust if the depositor dies before the beneficiary, leaving the trust account open and unexplained."

4. *The tentative rights of the presumptive beneficiary may be destroyed by the depositor during his life by* " *revocation, or some decisive act or declaration of disaffirmance.*"

This position is the direct holding of the *Totten* case itself, since it there appeared that the decedent had opened the account in

question in her name "in trust for" the respondent, and had later, in her lifetime, deleted the trust provision and transferred the account to herself, relieved of the trust provision. To this extent only did the *Totten* decision mark an advance in the law of savings banks trusts.

5. *The tentative rights of the presumptive beneficiary may be turned into vested present rights during the lifetime of the depositor, if the latter " completes the gift in his lifetime by some unequivocal act or declaration."*

This position, so far as the case then before the bar or the decisions cited was concerned, was pure dictum, but in this respect followed its earlier treatment of the subject in *Beaver* v. *Beaver* (117 N. Y. 421), which, in the discussion at page 121, is regarded as marking the beginning of the modern doctrine on the subject.

It is the nature of the " unequivocal act or declaration," so required, which has given rise to substantially all of the litigation on this subject since the rendering of the *Totten* decision. This appears especially strange, since even a cursory study of the cited cases which led to the inclusion of this portion of the statement, makes it absolutely clear what the court had in mind by the language employed.

An analysis of the cases cited as a basis for this portion of the rule merely emphasizes the basic legal fact that the rights during his life of the depositor, in a savings bank deposit made in his own name in trust for another, differ in no respect from his rights in any other property which he may possess, so far as transfer or divestment of interest is concerned.

Any person who is possessed of personal property of value may give it to another outright by satisfying certain legally prerequisite conditions. He may also divest himself of its beneficial enjoyment, while retaining the legal title, by compliance with certain recognized legal formalities. The *first* process is familiarly known as a gift; the *second*, as a declaration of trust. No other processes for gratuitous transfer of property are known to the law, and nothing in the language of the Court of Appeals in the *Totten* case gives any reasonable ground for supposition that the court, by its statements therein contained, contemplated the divestment of the beneficial rights of the settlor in a tentative trust by any other means.

It will be of advantage in this connection to recall the language of the cited cases, pertinent to this question.

In *Martin* v. *Funk* (75 N. Y. 134), the first case cited in the *Totten* decision, the court in holding that an irrevocable trust had been created, said (at p. 137): "It is clear that a person *sui juris*, acting freely and with full knowledge has the power to make

a voluntary gift of the whole or any part of his property, while it is well settled that a mere intention, whether expressed or not, is not sufficient, and a voluntary promise to make a gift is *nudum pactum*, and of no binding force. (*Kekewich* v. *Manning*, 50 Eng. Ch. 175, and cases cited.) The act constituting the transfer must be consummated, and not remain incomplete, or rest in mere intention, and this is the rule whether the gift is by delivery only, or by the creation of a trust in a third person, or in creating the donor himself a trustee. Enough must be done to pass the title, although when a trust is declared, whether in a third person or the donor, it is not essential that the property should be actually possessed by the *cestui que trust*, nor is it even essential that the latter should be informed of the trust."

Again (at p. 138): "If what she did was sufficient to constitute herself a trustee, it must follow that whatever control she retained would be exercised as trustee, and the right to exercise it would not be necessarily inconsistent with the completeness of the trust."

Again (at p. 141): "No particular form of words is necessary to constitute a trust, while the act or words relied upon must be unequivocal, implying that the person holds the property as trustee for another."

Again (at p. 142): "The rule does not require that the gift shall be made in any particular way, it only requires that enough shall be done to transfer the title to the property, and one of the modes of doing this is by an unequivocal declaration of trust."

In *Beaver* v. *Beaver* (117 N. Y. 421), which, the court indicates, marked the genesis of the modern doctrine of savings bank trusts, the court says (at p. 428): "There was no declaration of trust in this case, in terms, when, the deposit of July 5, 1866, was made, nor at any time afterwards, and none can be implied from a mere deposit by one person in the name of another. To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created. It would introduce a dangerous instability of titles, if anything less was required, or if a voluntary trust *inter vivos* could be established in the absence of express words, by circumstances capable of another construction or consistent with a different intention. (*Young* v. *Young*, 80 N. Y. 438, and cases cited.)

"The plaintiff's title to the fund must depend, therefore, upon the question of gift. The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent,

and on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. In case of bonds, notes or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; and so, also, where the debt is that of donee it may be given, as has been held, by the delivery of a receipt acknowledging payment. (*Westerlo* v. *De Witt*, 36 N. Y. 340; *Gray* v. *Barton*, 55 id. 72; 2 Schouler on Pers. Prop. § 66, *et seq.*) The acceptance, also, may be implied where the gift, otherwise complete, is beneficial to the donee. But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated. Several cases of this kind have been recently considered by this court. (*Young* v. *Young*, 80 N. Y. 438; *Jackson* v. *Twenty-third St. Ry. Co.*, 88 id. 520; *In re Crawford*, 113 id. 560.)"

The citations on page 133 of *Matter of Bolin* (136 N. Y. 177) and of *Sullivan* v. *Sullivan* (161 N. Y. 554), neither of which involved savings bank trusts, render the thought in the mind of the court in this connection especially clear, as will appear from the following quotations, which embody the only language in these cases possessing any possible relevancy to the questions under consideration in the *Totten* case.

In *Matter of Bolin* the court says (at p. 179): "The infirm condition of the deceased and her demands upon her daughter's time and attentions might be strong evidence to bear out the presumption of a gift; if there was evidence to base the presumption upon, such as the proof of acts tending to establish an intention to give, and amounting to a delivery or transfer. But the difficulty here is that there is no such evidence. There were no words of gift and the

receipt and holding of the pass book were consistent with a mere custody, or agency. The law never presumes a gift. To constitute a valid gift there must have been the intent to give and a delivery of the thing. The evidence must show that the donor intended to divest herself of the possession of her property and it should be inconsistent with any other intention or purpose."

In *Sullivan* v. *Sullivan* the court said (at p. 557): " It is further urged on behalf of the defendant that the transactions between the plaintiff's intestate and the bank created a trust under which the bank became a trustee for the defendant, subject to a power of revocation which resided in the plaintiff's intestate during her lifetime; or at least that the plaintiff's intestate constituted herself a trustee for the benefit of the defendant, subject to the same power of revocation. The inherent weakness of both of these propositions lies in the fact that in the transactions between the plaintiff's intestate and the bank there was no immediate and fixed change of title to the fund. There was no intention, either expressed in terms or·to be implied from the nature of the transaction, to immediately transfer the title of the fund to the defendant, or to the bank, except as the depositary and debtor of the depositor. This is the essential difference between the position of the defendant and the *cestuis que trust* in the cases cited in support of her contention. * * * Reduced to its simplest analysis, the transaction between the plaintiff's intestate and the bank established between them only the relation of debtor and creditor, which could not be, and was not changed by the intention of the former to provide, in the event of her death, for the defendant. The defendant acquired no rights *in præsenti;* she was to acquire them *in futuro.* This is the test which marks the essential difference between a valid gift *inter vivos*, or an effectual parol trust, and the mere expressed desire or intention to do that in the future which can only be done by will. As was said by this court in *Gilman* v. *McArdle* (99 N. Y. 461):·' It is only in respect to dispositions of property which are not to have any effect except upon the death of the owner and are revocable, that he is confined to a will.' "

The cumulative result of these citations renders it evident that the real effect of " 5," *supra,* is: *5. The tentative rights of the presumptive beneficiary may be turned into vested present rights during the lifetime of the depositor, if the latter completes the gift in his lifetime either by acts sufficient to constitute a valid gift inter vivos, or to effect the erection of a present trust.*

The legal prerequisites to both have been clearly defined in innumerable authoritative determinations and are not open to the least conjecture.

Read in connection with the cases cited by the court as authorities for its position, it becomes apparent, therefore, that the true meaning of the stated examples of " some unequivocal act or declaration " requisite to the transformation . of the tentative trust into an irrevocable one, namely, (a) " delivery of the pass book " and (b) " notice to the beneficiary," refer, in the former instance, to a completed gift *inter vivos*, which would transfer the legal dominion over the account to the donee, and in the latter, to an unequivocal statement of the depositor that the amount of the account was held by the depositor on a present trust for the named beneficiary.

The court emphasizes the necessity of an " unequivocal * * * declaration."

It is a pertinent consideration in this connection that this expression is repeatedly used by the court in other cases in its statement of the requirements for the constitution of an express trust, *e. g.,* the language in *Barry* v. *Lambert* (98 N. Y. 300, at p. 306): " It is well settled that a trust in personal property may be created by parol, and that no particular form of words is necessary for its creation, but the words or acts relied on to effect that object, should be *unequivocal,* and plainly imply, that the party making them intended to divest himself of his interest in the property, and hold it thereafter for the use and benefit of another." (Italics not in original.) (See, also, *Martin* v. *Funk,* at p. 141, quoted *supra; Young* v. *Young,* 80 N. Y. 422, 438.)

The meaning of the word " unequivocal " is free from doubt. Its connotation is: " Capable of being understood in only one way " (Stand. Dict.); " without doubt; without room to doubt " (Webster Dict.). It is a stronger expression than " beyond all reasonable doubt." (*Shugart* v. *Halliday,* 2 Ill. App. 45, 51.) That it was used in this sense in the *Totten* case seems obvious from the apparent reliance of the court upon the *Beaver* decision, in which, as noted, it was held that " circumstances which show *beyond a reasonable doubt* that a trust was intended to be created " are to be held a condition precedent to an adjudication to that effect.

The application of these principles to the facts of the case at bar renders the decision of the court obvious.

The depositor was a lady of advanced years and feeble health, living alone on the top floor, back, of a rooming house on Greene avenue, Brooklyn. She had been unemployed for about nine years prior to her death, and was solely dependent for her daily needs on the small property which she possessed. A portion thereof had apparently come to her on the death of a brother, Charles, by the medium of a savings bank trust which he had created for her. She had two other brothers, Leonard and Herbert. Certain investments

which she had made through the instrumentality of the former had proved unfortunate, and at some undisclosed time she opened a savings account in her name " in trust for " the latter, retaining the book in her own possession up to the time of her death except for occasional temporary custodial purposes. On several occasions she told her physician (S. M. 8) of the opening of the account " so she would make sure Mr. Herbert Vaughan would get it." She also made similar statements to the woman in whose house she was a tenant (S. M. 22), it being her desire that he " receive all that she had left." It seems apparent (S. M. 25) that on at least one occasion she drew moneys from this account for her own purposes.

Aside from the foregoing, the only testimony elicited on behalf of respondent which possesses any particular relevancy to the decision, came from the mother of the latter, and reads as follows (S. M. 42): " Q. Did Edith Vaughan say in the presence of Herbert Vaughan that she had given that book for Herbert? A. She said in the presence of Herbert before me that she had fixed Herbert up in the Brevoort Savings Bank the same as Charlie had fixed her up and Herbert was standing getting something out of the closet; he was not three feet away. * * * Q. Do you know how Charlie had fixed her? A. Why put it in trust for Edith. Q. He had opened an account in trust for Edith? A. Yes."

While " no particular form of words is necessary to constitute a trust, * * * the * * * words relied upon must be unequivocal." (*Martin* v. *Funk, supra.*) It has certainly not been demonstrated that the decedent had any intention to vest in Herbert any rights in the account *in præsenti.* His interest in the fund was to be solely *in futuro,* on her death (*Sullivan* v. *Sullivan, supra*), and its extent was to be the sum which might remain therein after her lifetime needs were satisfied. There is here shown neither " an explicit declaration of trust," nor " circumstances which show beyond reasonable doubt that a trust was intended to be created " (*Beaver* v. *Beaver, supra*) which was to take effect prior to Edith's death.

All that the testimony demonstrates is that she wished him to have the money remaining in the account after she had no more use for it. This is far from a demonstration that she intended to vest in him a present right to the fund so as to make herself guilty of a substantial theft if she used any part of it for her own necessities. (*Farleigh* v. *Cadman,* 159 N. Y. 169, 173, 174; *Willis* v. *Smyth,* 91 id. 297, 300.) Nor does it appear from the testimony that " Charlie had fixed her up " with an irrevocable trust. There is no presumption that a savings bank trust is of such a variety, and it is equally or more plausible, on the testimony, to believe that

he had benefited her only by the usual form of savings bank trust in which her interest matured only on his death. If such was the fact, her actions in respect to Herbert corresponded precisely to those of her brother Charles in respect to her. Had Herbert survived his sister he would have received the sum remaining in the account, in the same manner that she received the balance in the account opened by Charles. The only circumstance which defeated this result was that Herbert predeceased her. On well-settled authority, this terminated his interest in the tentative trust and his estate possesses no interest therein. (*Matter of United States Trust Co.*, 117 App. Div. 178, 181; *Garvey* v. *Clifford*, 114 id. 193, 196; *Cunningham* v. *Davenport*, 147 N. Y. 43, 45; *Matter of Bulwinkle*, 107 App. Div. 331, 334; *Matter of Duffy*, 127 id. 74, 75.)

There remains for consideration merely the contention of the respondent that the by-laws of the Brevoort Savings Bank were in such form as to alter the method of devolution of this account as provided by usual rules of law. The particular by-law relied upon, and which was printed in the pass book of the depositor, read:

" 6. On the decease of any depositor the amount standing to the credit of the deceased shall be paid to his or her legal representative, except in case of an account in trust for another.

" In the event of the death of the trustee the total amount to the credit of the deceased shall be paid to the person for whom the deposit was made unless other further notice of the existence and terms of a legal and valid trust shall have been given in writing to the bank; in the event of the death of the trustee and the person for whom said deposit was made, the amount thereof shall be paid to the legal representative of such person."

The claim is made that the final clause quoted constituted a contract between the depositor and the bank which had the effect of altering the natural method of devolution of this property as declared by the courts of this State as hereinbefore noted.

It is freely admitted by the respondent that this clause is as capable of the construction of referring to the death of the beneficiary after the death of the depositor as to that of his death before. It is contended, however, that " there would be no purpose in this provision unless it contemplated the case of the beneficiary dying before the trustee, because, where the beneficiary survives the trustee, he would be entitled in his own right to the fund, and, of course, if he should subsequently die, it would, like all the other assets of his estate, go to his legal representative. In other words, the provision as to payment in the case of death of both the trustee and the beneficiary would be entirely superfluous were it limited to the case of the beneficiary surviving the trustee."

In substance that position is that the clause should be construed as meaning a devolution different from the one the law would prescribe, since if it be construed as merely declaratory of the existing law, it would be a needless superfluity.

This argument entirely loses sight of the fact that the other two provisions of the printed by-law, providing that on the death of an ordinary depositor the amount of the account shall be paid to his estate, and, in the ordinary case of a trust deposit, that it shall be paid to the named beneficiary, are both merely declaratory of the law.

In the opinion of the court the respondent has wholly missed the purpose of the entire provision. Its sole object, so far as it goes, is to advise interested, presumably lay, parties of the manner in which the law would dispose of the bank deposit on the stated contingencies which are most likely to happen.

Section 262 of the Banking Law provides that "The board of trustees of a savings bank may from time to time make by-laws, rules and regulations, not inconsistent with law, * * * for the repayment of deposits, subject to the provisions of sections two hundred and forty-eight and two hundred and forty-nine of this article, * * *." Subdivision 2 of the latter section contains a provision which is substantially the same as the first clause of the second sentence of the quoted by-law.

Without deciding that a by-law which provided for a devolution of the ownership different from that directed by law would be illegal and beyond the power of the savings bank, it is sufficient to say that there is an extremely strong inference that the inclusion of the last quoted clause had no such object in view and was merely intended, like its fellows, to inform the depositor and others interested of the method of disposal which the law would enforce on the particular contingency envisaged, namely, that if the depositor died, and his death was followed by that of the named beneficiary before the latter had reduced the deposit to possession, the estate of the beneficiary would receive the avails.

It follows, therefore, that since the decedent made no valid gift or declaration of express trust of the savings account during her lifetime and the tentative *cestui que trust* predeceased her, the funds in the account passed to her estate and the executor is entitled to recover the indicia of ownership thereof.

Proceed accordingly.