In the Matter of the Estate of LENA A. SCHRIER, Deceased.

Surrogate's Court, Kings County, November 23, 1932.

*Neufeld & Schlechter*, for the petitioners.

*Joseph A. Keenan*, special guardian for Grace Schrier.

*Guggenheimer & Untermyer*, for Hebrew University of the City of Jerusalem.

*Stroock & Stroock*, for Jewish Theological Seminary of America.

WINGATE, S. The present proceeding includes two separate applications by or on behalf of daughters of decedent, who are named as primary beneficiaries under her will, for the recovery from the executors of their mother's estate of the proceeds of certain savings bank accounts opened by the testatrix during her lifetime in trust for the respective daughters. On the return day of the citation it was stated to the court that no opposition was made to the application on behalf of the daughter Grace, and it was marked as granted on consent. A perusual of the submitted affidavits, however, has disclosed that whereas no active opposition was interposed, the Empire Trust Company, one of the executors under the will, after a recital of pertinent facts, expressly submitted their legal effect to the court for adjudication. As a result of this action, the onus was placed upon the court of adjudicating the legal effect of the admitted facts, wherefore the relief prayed was not capable of default allowance.

Before entering upon the consideration on the merits of the problems presented by these applications, it will be of advantage to recall certain basic principles of procedure in cases which are

submitted for decision upon affidavits only. It is, of course, primary that without a hearing a determination can be made only in cases where the facts are not in dispute. It is also fundamental that the stipulated facts upon which a determination can be based must include none which would be basicly inadmissible in evidence if attempted to be adduced upon an actual hearing.

These observations are particularly pertinent to certain statements in the affidavit of Miriam R. Schlechter in support of the present application of Dorothy Schrier. This affiant, although under a fiduciary duty to protect the estate against all claims, like those here asserted, which would deplete the assets of the estate in her charge, has, in her supporting affidavit, gone to the length of recounting alleged statements made to her by the decedent respecting her intentions regarding the disposition of her property as set forth in the will. This amounts to an effort to influence the devolution of the property of decedent by alleged parol statements of the purpose which testatrix had in mind by the words used in the will. The instrument itself is unambiguous and on basic principles of construction the only testimony admissible, is such as is necessary to inform the court of the situation of the testatrix at the time the document was executed.

As is stated in *Brown* v. *Quintard* (177 N. Y. 75, at p. 83): "Extraneous and parol evidence is admissible to explain a will when there is a latent ambiguity arising *dehors* the instrument, but *never to supply, contradict, enlarge or vary the written words.*" (Italics not in original.) Authorities to like effect might be multiplied, but it will be sufficient to refer to *Union Trust Co.* v. *Boardman* (215 App. Div. 73, 80; affd., 246 N. Y. 627); *Matter of Chambers* (112 Misc. 551; affd., 196 App. Div. 934); *Arthur* v. *Arthur* (10 Barb. 9, 16).

Eliminating from consideration, therefore, these alleged statements of intention of the decedent, which are wholly incompetent, the pertinent facts upon which decision must be based are as follows: The will in question was drawn on June 3, 1927, and was admitted to probate January 28, 1932, testatrix having died on the previous December twentieth. The main portion of the testamentary document erected two trusts, the first, for decedent's daughter Dorothy, the second for her other daughter, Grace. By the first she gave to Empire Trust Co. and Miriam R. Schechter, as trustees, "each and every the cash on hand and moneys on deposit to my credit in banks, savings banks and the shares of capital stock of Lensley Realty Co., Inc., and or the proceeds thereof * * *." The terms of the trust were that the income should be paid to Dorothy for life with portions of the principal payable to her on the attainment of

specified ages, with remainder to her children, or in default thereof, to the trust for Grace.

The principal fund of the second trust included, in substance, the remaining property of testatrix's estate, and directed its use for Grace in the same manner and under like terms as were provided for Dorothy in the trust for the latter. Finally both trusts provided that if both daughters died prior to the age of thirty-five, leaving no issue, the remainders of the respective trusts should be paid to Jewish Theological Seminary and Hebrew University in Jerusalem.

At the time of the decedent's death there were standing in her name six savings bank accounts in trust for Dorothy and two in trust for Grace. Five of the accounts for Dorothy and both of those for Grace had been opened by the decedent prior to the making of the will and from one of each withdrawals had been made subsequent to the date of the will.

The relief sought in the present applications is for a determination that Dorothy and the guardian for Grace, respectively, are entitled to recover from the executors the funds in these several trust accounts as they stood at the time of the death of the decedent.

It is contended on behalf of the guardian for Grace that the accounts for the latter became an irrevocable trust during the lifetime of the decedent by reason of the fact that he, her father, was aware of their existence; and it is argued that this knowledge is attributable to her by reason of his relationship to her, and that thus the accounts are brought within the rule laid down in *Matter of Totten* (179 N. Y. 112, 125). This court has had recent occasion to consider the facts which will warrant a determination that a tentative savings bank trust has become an irrevocable trust during the lifetime of the depositor. (*Matter of Vaughan*, 145 Misc. 332.) In view of the extended consideration given the question in that opinion, it will be sufficient to here state that such a contention is not tenable on the facts here disclosed.

The sole question for decision in this case, therefore, is as to whether the tentative trusts constituted by the opening of the savings bank accounts in the name of testatrix " in trust for " the respective daughters were revoked by her will. The reference by the decedent in her will to the savings bank accounts has been quoted and the gift of all cash on hand, and on deposit to her credit in savings banks, unquestionably amounted to a specific bequest of the items of property indicated. (*Matter of Smallman*, 138 Misc. 889, 897; *Matter of Klatte*, 92 id. 651; *Hamilton* v. *Hamilton*, 75 id. 21, 22; *Matter of Beckett*, 15 N. Y. St. Repr. 470; *Matter of Matthews*, 122 App. Div. 605, 607; *Crawford* v. *McCarthy*, 159 N. Y. 514, 518, 519; *Larkin* v. *Salmon*, 3 Dem. 270, 272.)

It has not been demonstrated that either before or after the time of the drawing of the will, decedent possessed any savings bank accounts other than those here in question. It must, therefore, follow that unless the court is arbitrarily to delete from the will the reference to savings bank accounts therein contained, the direction for their erection into a trust for Dorothy must be effectuated. That such a deletion would be contrary to the most primary principles of documentary construction is well established. (*Matter of Buechner*, 226 N. Y. 440, 443; *Fleischman* v. *Furgueson*, 223 id. 235, 239; *Matter of Howells*, 145 Misc. 557, and cases cited.)

The question as to the varieties of testamentary directions which will effect a revocation of a tentative savings bank trust was fully considered by this court, and all controlling authorities cited and analyzed, in *Matter of Richardson* (134 Misc. 174, at p. 178 *et seq.*). To the authorities therein cited may be added the illuminating decision of Mr. Justice LAZANSKY, in *Moran* v. *Ferchland* (113 Misc. 1). On this subject the learned justice says (at p. 3): " Is not the publication of a will, leaving the very account involved to another person, a decisive declaration of disaffirmance? By such an act of disaffirmance the tentative trust is impliedly revoked. By her will the depositor has said that which I intended at the time of my death should go to the person named as beneficiary in my passbook is to go to the person named in the will. It seems to me that such a declaration is as much a revocation as if the depositor had had the passbook changed in favor of another person. Such an act would mean that the new named beneficiary would get the money upon death of depositor if the designation was not revoked or disaffirmed. That is just what, in effect, was done by the publication of the will."

On the foregoing authorities it is entirely obvious that the terms of the will at bar effected a revocation of all of the eight tentative savings bank trusts in question and constituted them parts of the specific legacy bequeathed to the trustees for Dorothy.

The total valuation of the properties bequeathed to the trustees in the respective trusts as set forth in the affidavits of the parties is a further indication that this result coincides with the probable intention of the testatrix. The trust for Dorothy includes the checking account, the stock in the Lensley Realty Company, and the eight trust bank accounts, aggregating a total face value of $36,705.58. The trust for Grace includes the balance of testatrix's stock and the real estate of which she was seized at the time of her death, which have an indicated total worth of $37,804.33. The result here attained thus places the two daughters of the testatrix on a substantial parity of benefit which is a construction meeting

with judicial favor. (*Matter of Berbling*, 134 Misc. 730, 732; *Matter of Balsamo*, 136 id. 113, 115, 116; *Matter of Gebhardt*, 139 id. 775, 779; *Matter of Grefe*, 140 id. 134, 138.)

It must follow, therefore, that both applications for the payment over of these funds by the executors must be denied.

Proceed accordingly.