HERBERT L. DILLON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58025, 59280. Promulgated August 23, 1935.

*W. C. Magathan, Esq., Thomas G. Haight, Esq.,* and *J. O. Wynn, Esq.,* for the petitioner.

*DeWitt M. Evans, Esq.,* and *John Morawski, Esq.,* for the respondent.

OPINION.

ARUNDELL: Petitioner claims that by opening brokerage accounts in the names of his minor children he created valid and irrevocable trusts for them, or, in the alternative, made valid gifts to them, and in either event the income attributable to those accounts was not his income and not taxable to him. The respondent argues against both propositions. He contends that the alleged trusts were too indefinite to be valid, and the margin accounts are not a proper subject of trusts; further, that there was no gift because petitioner made no delivery and did not divest himself of dominion and control.

There appears to be some confusion of thought on the part of counsel for the respondent as to what petitioner claims was given

to the children. He argues that margin accounts may not be the subject of trusts. We do not understand this to be involved in the question submitted. Petitioner made contributions of money to accounts for his children, and if such contributions were gifts absolute or in trust the proceeds would belong to the beneficiaries and be taxable either to them or the trustee. We do not understand that petitioner contributed a "margin account" as such. He paid in money and then directed the use of that money to operate a margin account. If local law disapproved of use of trust funds in that way, it would not affect the validity of the trust or tax liability, but would simply be a matter for the petitioner to settle with the beneficiaries if and when called to account.

Counsel for the respondent calls our attention to the so-called "pass book" cases, of which there are many in the New York reports. The gift of a bank account is said in *Webb* v. *Commissioner*, 67 Fed. (2d) 859, to be somewhat analogous to the opening of a brokerage account in the name of another. The rule in the pass book cases, at least since the decision in *Beaver* v. *Beaver* (1889), 117 N. Y. 421; 22 N. E. 940, is that the deposit by one person of his own money either in his own name as trustee for another, as in *Matter of Totten*, 179 N. Y. 112; 71 N. E. 748, or in the name of another, *Beaver* v. *Beaver, supra*, without more, "does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." *Matter of Totten, supra.* See *In re Vaughan's Estate*, 145 Misc. 332; 260 N. Y. S. 197, for a collection and discussion of the cases on this subject. The rule of the cases is that a deposit in the name of another will constitute the creation of a trust if accompanied by an "unequivocal act or declaration" of the depositor that he holds the amount of the account on a present trust for a named beneficiary. *In re Vaughan's Estate, supra.*

In the present case the evidence is that petitioner declared to all who might be interested that the accounts were established for the benefit of his children. It is his testimony that that was the purpose of the accounts and in this he is corroborated by his wife, the office manager of the firm, and the accountant of the firm. True, he did not notify the beneficiaries, but, as they were minors and of very tender years, that would have been useless. *Lilian K. Blake*, 23

B. T. A. 554, 564. The statements made by petitioner to all who had any connection with the accounts, his scrupulous maintenance of them as separate accounts in the names of the beneficiaries, and his representations of trusteeship in Federal tax returns, in our opinion, amount to the "unequivocal acts or declarations" which under the decisions above cited will convert what would otherwise be a tentative trust into a present trust.

These trusts were irrevocable under the rule that there may be no revocation without the consent of the beneficiary in the absence of express reservation of power to revoke. Perry on Trusts (6th Ed.), sec. 104; *Title Guarantee & Trust Co.* v. *Haven,* 214 N. Y. 468.

There is little, if any, distinction between these cases and that of *Emil Frank,* 27 B. T. A. 1158. In that case the taxpayer in 1925 opened trading accounts with a broker for his three minor daughters. At the time the accounts were opened the taxpayer explained to the brokers that his plan was to create a separate estate for each of the girls and that the accounts belonged to them. The taxpayer managed the accounts, buying and selling stocks, until 1929, when the securities in the trading accounts were transferred to an investment trust. In that case we concluded that the brokerage accounts "belonged in fact to the daughters" and that the respondent erred in taxing the income to the father. About the only distinction between the *Frank* case and this is that there the children were somewhat older, 8, 14, and 16 years of age, when the accounts were opened, and the father discussed the handling of the accounts with them and from time to time took delivery of purchased securities issued in their names. These differences do not affect the result. The essential facts are the same. It is our opinion that here, as in the *Frank* case, the accounts belonged to the children and the income from them was not the income of the petitioner.

*Decision will be entered under Rule 50.*