In the Matter of the Estate of KATHERINE McCABE, Also Known as CATHERINE McCABE, KATE McCABE and KATIE McCABE, Deceased.

Surrogate's Court, Kings County, April 25, 1941.

*Samuel Mazzola,* for Raymond Frohder, as executor, etc., petitioner.

*Judge & Collins,* for Josephine Barry Boggiano, legatee, objectant.

WINGATE, S. The transaction which forms the basis of the chief issue upon this accounting is concerned with a loan of $500 made by the decedent to the executor and his wife. This is evidenced by a note in ordinary form, dated July 10, 1935, signed by the obligors, by which they promise to pay that sum to " Miss Katherine McCabe " one year after date with interest at five per cent. Simultaneously with the giving of this note a paper was signed by the decedent and by the borrowers which reads as follows:

" This is to certify that Raymond and Dorothy Frohder have made a loan of $500 (Five hundred) from Katherine McCabe. In return said Raymond & Dorothy Frohder have signed a note for $500 at 5% per annum payable semi annually. In addition as further collateral for this loan 20 shares of Hearst Cons. Stock Nos. SF075923 & SF0759166 have been placed as security. In event of death of said Katherine McCabe and in event that said loan of $500 remains unpaid said stock and note are to revert to Raymond Joseph Frohder son of Raymond & Dorothy Frohder. On payment of loan of $500 Both note and stock are to be returned to Raymond & Dorothy Frohder.

" In Witness of the above the signatures of the undersigned are affixed

> " DOROTHY FROHDER
> RAYMOND E. M. FROHDER
> KATHERINE McCABE "

It was admitted by the wife of the executor that she had prepared this writing, her version of the transaction being that when she and her husband approached the decedent in respect of the making of the loan the latter assented thereto, saying that she was going to take it from their boy. In explanation of this statement it was shown that in May, 1932, the decedent had opened an account in her name " in trust for Raymond Frohder Jr " with the Brooklyn Savings Bank which had increased by the addition of interest to $532.74 by July 10, 1935, and on the latter date had withdrawn $500 from this account, which was presumably the sum loaned to the accountant and his wife on the same day.

Raymond Frohder, Jr., as he is designated in the bank book, is the same person as Raymond Joseph Frohder named in the writing. He is a grandnephew of the decedent. It was further

demonstrated on the hearing that the savings bank book to which reference was made was found among the effects of the decedent after her death together with a number of similar books, demonstrating that the decedent had opened several similar accounts in her name in trust for named nieces, nephews and grandnieces.

The executor did not himself pay the note following the death and admittedly made no effort to collect it from his wife. On the contrary, he purported to indorse and deliver it, together with the collateral security, to Raymond Frohder, Jr., or Raymond Joseph Frohder, who, the records on the probate of the will disclose, was in 1939 an infant over the age of fourteen years. Whether or not he has now attained his majority has not been elucidated.

The sole legatee under the decedent's will has interposed objections to the account by reason of the admitted failure of the executor to make any effort to collect the note and his delivery thereof and of the securing collateral to his son. In support of these objections it was demonstrated that the accountant, whereas unemployed, is in receipt of a pension of $1,500 a year and that his wife, who was the comaker of the note, is employed as a public school teacher and is in receipt of an annual salary of $3,900 a year. No disclosure was made respecting the value of the collateral.

The primary reliance of the accountant in defense of his method of dealing with the note is that the agreement providing for payment to his son in the event of failure of satisfaction prior to the payee's death is sustainable as a promise for the benefit of a third person which is enforcible by such person under the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) and *Seaver* v. *Ransom* (224 id. 233); indeed, primary reliance is placed on the latter authority in the memorandum submitted on his behalf.

Unfortunately for this contention, the Court of Appeals, in *McCarthy* v. *Pieret* (281 N. Y. 407, 410), in a situation bearing a striking similarity to the present, pointed out the inapplicability of this line of cases in the following language: " *Seaver* v. *Ransom* (224 N. Y. 233) is no authority for sustaining the claim of the respondents here. Contracts made for the benefit of third parties are well recognized today, but they are executed contracts, where the promisee is unable to revoke or control the promisor in the fulfillment of the promise. The decision has nothing to do with attempts to make testamentary dispositions, and assumes that all three parties are alive."

The remaining argument advanced by the accountant is that the tentative trust presumptively created by the opening of the savings bank account became a fixed and absolute trust by reason of the alleged statement by the decedent at the time of the making

of the loan that it was in substance being made from the funds of the boy.

It is, of course, true that the doctrine of *Matter of Totten* (179 N. Y. 112, 125) contemplates a situation in which the tentative rights of a beneficiary in such a transaction may be transformed into present vested rights if the depositor " completes the gift in his lifetime by some unequivocal act or declaration," but the court is satisfied as a result of its analysis in *Matter of Vaughan* (145 Misc. 332) of the various decisions preceding *Matter of Totten,* which its pronouncement attempted to reconcile and explain, that to produce this effect, the depositor must complete " the gift in his lifetime either by acts sufficient to constitute a valid gift *inter vivos,* or to effect the erection of a present trust " (*Matter of Vaughan, supra,* 338); furthermore, such acts must " be unequivocal," *i. e.,* " capable of being understood in only one way," " beyond all reasonable doubt " and plainly implying " that the party making them intended to divest himself of his interest in the property, and hold it thereafter for  *  *  * another." (See *Matter of Vaughan, supra,* 339, and authorities cited.)

Did the acts in the present case comply with this description? It was held in *Matthews* v. *Brooklyn Savings Bank* (208 N. Y. 508) and in *Hessen* v. *McKinley* (155 App. Div. 496) that notification to the beneficiary did not transform the tentative trust into an absolute one (see, also, *Matter of Schrier,* 145 Misc. 593, 596), wherefore the mere statement concerning which the mother testified cannot of itself be deemed to have established this purpose in the required " unequivocal ' manner. Do the other acts of the decedent lend color to this theory? On the contrary. If the trust had become an irrevocable one then the decedent had constituted herself a trustee with all the usual duties and obligations of the office, and, in that capacity, was a person distinct from herself as an individual. (*Rathbone* v. *Honey,* 58 N. Y. 463, 467; *Collins* v. *Hydorn,* 135 id. 320, 324, 325; *Leonard* v. *Pierce,* 182 id. 431, 432; *Pardee* v. *Mutual Benefit Life Ins. Co.,* 238 App. Div. 294, 296, 297; *Matter of Sullivan,* 169 Misc. 16, 17; affd. 255 App. Div. 1008.) She, however, did not treat the fund as a trust *res.* The note which she took back was not to her in her capacity as trustee, but as an individual. To be sure she wanted the boy to benefit by the amount which she had tentatively dedicated to him, but her every act negatives any intent for present benefit. Any rights which were to accrue to him were to come into being only on her death.

She could accomplish this so far as the savings bank account was concerned by application of the somewhat anomalous doctrine of *Matter of Totten.* She could not do so by means of an agreement

of the variety here demonstrated, since it amounted to a testamentary disposition. (*McCarthy* v. *Pieret, supra,* 413; *Townsend* v. *Rackham,* 143 N. Y. 516, 519.) The initial conception of the accountant respecting the nature of the document when he attempted to probate it as a codicil was correct. Unfortunately for his son it was not attested as required by law, and denial of its probate was obligatory.

It follows that the transfer of the note and accompanying collateral to Raymond J. Frohder was improper, and the objection to that action must be sustained; furthermore, on the demonstration of the record, the executor was guilty of culpable neglect in having failed to collect the note from his comaker, if not from himself, since under the law she was severally as well as jointly liable thereon (Neg. Inst. Law, §§ 55, 110; see, also, § 36, subd. 7) and was demonstrated to have resources ample for payment. The second and fourth objections to the account must, accordingly, be sustained.

The first objection respecting the impropriety of inclusion of real estate in the account was admittedly a technical one designed to prevent any attempt to base commission computations upon its value. It will be sustained.

The third objection, addressed to the compensation of the attorney for the executor and his reimbursement for expenditures, will be overruled since the court is of the opinion that the sums paid were reasonable under the circumstances disclosed.

Enter decree on notice in conformity herewith.