TIERNEY v. FITZPATRICK.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

1. TRUSTS—CREATION—EXPRESS TRUSTS—DEPOSIT IN BANK.

A deposit made in a bank by one person in his own name for another is merely a "tentative" trust, and is revocable at will, unless the depositor completes the gift by some unequivocal act during his lifetime, or dies before the beneficiary, without revocation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 44.]

2. SAME—ENFORCEMENT OF TRUST—ACTIONS—EVIDENCE.

In an action to recover money deposited in a bank by deceased in trust for plaintiff, and withdrawn by deceased before his death, evidence *held* insufficient to show a change of a tentative trust into an irrevocable one, entitling plaintiff to the money.

Laughlin, J., dissenting.

Appeal from Trial Term.

Action by Frank L. Tierney against Mary Fitzpatrick, executrix. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

A. Gruber, for appellant.
L. H. Hall, for respondent.

SCOTT, J. The plaintiff appeals from a judgment entered upon a verdict in favor of the defendant. The case presented is one of a so-called "savings bank trust," and arises upon the following facts: On February 25, 1898, Launcelot J. Tierney, the father of plaintiff, had a deposit account in the Broadway Savings Bank, which then amounted to $3,060, being $60 in excess of the amount permitted to be deposited in one account (section 113, c. 689, p. 1895, Laws 1892). The secretary of the bank thereupon advised him to open an account for his wife, or in trust for one of his children, so as to reduce his account to an amount upon which interest could be allowed. Tierney thereupon opened an account entitled "Launcelot J. Tierney, in trust for Frank Tierney"; withdrew the surplus $60 from his own account, and deposited that sum with other moneys, aggregating in

all $199, to the credit of the new account.. He made other deposits from time to time of his own money until the total account aggregated, on July 4, 1904, $3,114. On July 21, 1904, he drew out the surplus of $114, and on October 14, 1904, he drew out the remaining $3,000, thus closing the account. The bankbook thereafter remained in the custody of the bank. On November 14, 1904, he died. This action is against his executrix to recover the $3,114, drawn out by the deceased during his lifetime. Both parties recognize the controlling force of the carefully formulated rule laid down in Totten v. Lattan, 179 N. Y. 112–125, 71 N. E. 748, 752, 70 L. R. A. 711, as follows:

"A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook, or notice to the beneficiary. In case the depositor dies before the beneficiary, without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

It will be observed that, under this rule, the deposit by any person in his own name in trust for another is termed a "tentative" trust, and is said to be revocable at will. It can be made irrevocable, or absolute, only in one of two ways: First, by some unequivocal act or declaration by the depositor in his lifetime; or, second, by the death of the depositor before the beneficiary, without revocation, or some decisive act or declaration of disaffirmance. The fact of withdrawal was a decisive act of disaffirmance, and the plaintiff was forced to fall back upon the first alternative, and to attempt to show that the tentative trust became irrevocable during the lifetime of the depositor by "some unequivocal act or declaration." To do this, evidence was given for the purpose of showing both the delivery of the passbook and declaration of the depositor. The plaintiff himself, of course, could not testify as to any personal transaction with his father, but the plaintiff's wife was called to prove the gift of the bankbook. She testified that her father-in-law visited her home every day, or nearly so. That in the spring of 1898 he brought the passbook to the house, and said to her husband (the plaintiff): "Here, Frank, here is the book. I have started an account in the bank, so if anything would happen to me you have something to fall back upon, knowing that you have rheumatism." That thereupon the book was put in a safe in plaintiff's house. That the deceased would take it out frequently and take it away with him for a day or more at a time—presumably to make a new deposit, or have the interest written up—and would then return it to the safe in plaintiff's house. It does not appear that deceased ever asked permission to retake the book into his possession, and the fair inference from the witness' testimony is that he took it when he chose, exercising the domination over it consistent only with a continuation of his ownership and control. We do not think that this was such a giving of the book to the beneficiary as was meant by the Court of Appeals, when it spoke of the gift of a bankbook as an unequivocal act, which would change the character of the trust

from a tentative one to an irrevocable one. The declarations relied on are the ones quoted above—to his son when the account was first opened, and certain alleged declarations to strangers. The witness Gray testified that deceased said to him in 1900, 1901, or 1902 that "he had placed money in the bank for Frank, as Frank was not well, he was troubled with rheumatism, and that he had money in the bank for Frank," and at the same time he showed witness the bankbook. The witness Cronin testified that in 1902 or 1903 deceased told him that he had put money in the bank in Frank's name, and said: "I will tell you one thing, Tim, I have fixed Frank in case of my death, that he will be perfectly independent, if anything should happen to him with the rheumatism to keep him away from his plumbing business." The witness Edgerton said that deceased said to him in 1900 or 1901 that when he died he would leave his son Frank in first-class circumstances—that he had money deposited in the Broadway Bank, to be kept in trust for his son Frank. It is significant that all these declarations, including the one to his son, amounted merely to a statement that money had been deposited in trust for Frank, and that it was the present intention of the depositor that Frank should have the money after his death. In no case were there used words indicating an intention to give Frank any interest in the fund in præsenti.

In our view, to establish the "unequivocal act or declaration," referred to by the Court of Appeals, as necessary to transfer a tentative trust into an irrevocable one, there must be something more than a declaration of intention that the cestui que trust shall have the property after the death of the depositor. Such a declaration, by its very terms, negatives the idea that any present interest in, or right to, the deposit is to pass to the cestui que trust during the depositor's life, and is entirely consistent with a reservation by the depositor of the right to deal with the fund during his lifetime. In our opinion, on the plaintiff's own evidence, a verdict should have been directed for defendant, and it is therefore unnecessary to consider the exceptions to the charge.

Judgment and order affirmed, with costs.

PATTERSON, P. J., and INGRAHAM and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). I am of opinion that there was a fair question of fact for the consideration of the jury, and that errors prejudicial to the plaintiff were committed upon the trial. The opening of the account constituted a tentative trust merely, revocable at will, but if the testator subsequently delivered the passbook to the plaintiff, who was the beneficiary, then the trust became irrevocable, and while the bank was probably justified under its rules in allowing the depositor to withdraw the fund on presentation of the passbook, without knowledge of its delivery to the plaintiff, yet that does not relieve the estate of the testator from liability for his appropriation of the fund to his own use. There was not only evidence of the delivery of the passbook to the plaintiff, but there was other evidence

of admissions and declarations by the testator tending to show that he had established the trust for the benefit of the plaintiff.

At the request of counsel for the defendant, the court specifically instructed the jury that the fact that the testator drew out the money deposited in the account and used it for his own purposes was "a circumstance to be taken into consideration" by the jury "in determining the question as to whether or not he intended to create a trust in favor of Frank Tierney." To this instruction counsel for the plaintiff duly excepted. In Mabie v. Dailey, 95 N. Y. 206, the Court of Appeals, in a similar case, unanimously held that the withdrawal of the fund by the depositor thereof "is not legitimate evidence that he did not intend, when the deposits were made, to create a beneficial trust for the beneficiaries named. If the withdrawal was with intent on his part to ignore the trust and to convert the money to his own use, it might be competent evidence of a change of purpose, but it throws no light on the original transaction," and sustained a direction of a verdict in favor of the plaintiff against the estate of the depositor. That case is cited without disapproval in Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, which, as I read it, was not intended to overrule any of the decisions on this subject, for the learned judge writing for the court says that, in laying down the rule quoted in the prevailing opinion, the court was "guided by the principles established by our former decisions." It is unnecessary to consider the other alleged errors, for this alone, in my opinion, requires a reversal.