ELIZABETH O'NEILL MURRAY and Others, Plaintiffs, *v.* THE BROOK-
LYN SAVINGS BANK, SOUTH BROOKLYN SAVINGS BANK, FULTON
SAVINGS BANK, THE DIME SAVINGS BANK OF BROOKLYN, and
MARY MARGARET O'NEILL, Individually and as Administratrix,
etc., of LAWRENCE J. O'NEILL, Deceased, Defendants.

Supreme Court, Special Term, New York County, January 18, 1939.

*Francis J. Mahoney,* for the plaintiffs.

*John H. Roberts,* for the defendant Mary Margaret O'Neill, as administratrix, etc., of Lawrence J. O'Neill, deceased.

ROSENMAN, J.  The deceased, Lawrence J. O'Neill, at the age of fifty-five, married Mary Margaret O'Neill, twenty-nine, on November 11, 1934.  Their marriage was not entirely a happy one, but they lived together until April 11, 1938.  On that day the deceased died, intestate.  The deceased had threatened to leave his wife on several occasions, and had also declared that he would leave her nothing when he died.

The decedent left him surviving no mother, father or children. His widow, two sisters and a number of nephews and nieces alone are entitled to share in his intestate estate of which the widow is the administratrix.

Upon his death it was discovered that the greater portion of his property consisted of various savings accounts in the defendant banks totaling $13,411.76.  There was, in addition, a small savings account in another bank, drafts on two banks in Ireland, two Christmas Club accounts and a pension due the estate from the New York City Employees' Retirement System, all totaling about $6,270.  The administratrix has possession of the $6,270 of assets and there will be approximately $2,000 of estate expenses.

The pass books to the accounts in the defendant banks were found in the decedent's trunk after his death.  They were not in the individual name of the decedent, but in the name of " Lawrence J. O'Neill in trust for " the various persons who are now the plaintiffs in this action.

Each of the plaintiffs claims the moneys on deposit in the account standing in his or her name as beneficiary thereof, under the rule promulgated in *Matter of Totten* (179 N. Y. 112).  Since the decision in that case this form of deposit has become popularly known as a " Totten Trust."  The administratrix, on the other hand, claims all the moneys in these accounts as part of the decedent's estate under the recent ruling in *Newman* v. *Dore* (275 N. Y. 371).  The defendant banks have no interest in this action except that they seek to be protected by a decree of this court in paying the sums on deposit to the persons entitled thereto.

The account now in the defendant South Brooklyn Savings Bank in trust for plaintiff Rev. Oliver P. Murray was opened by the deceased in his own name on March 21, 1932.  On December 9, 1936, a little over two years after his marriage, this account was changed to its present form by the signing of the following written declaration: " Account No. 385450 of the South Brooklyn Savings

Bank, is opened subject to my order during life. If Rev. Oliver Patrick Murray, O. F. M. survives me, the balance due on this account shall belong and be paid to him. If Rev. Oliver Patrick Murray die before me, said account shall belong to me absolutely. I reserve the right to revoke the trust at any time. (Signed) Lawrence J. O'Neill." Thereafter no withdrawals were made from this account; three additional small deposits were made, and six entries of interest noted, the last being April 6, 1938, just five days before his death. On that date the account had $4,204.22.

With respect to the accounts in the defendant Fulton Savings Bank, the proof discloses that the deceased originally had only one bank account in that bank in his own name before his marriage. On February 24, 1938, the deceased closed this account by withdrawing the entire balance and depositing it in a new account in his name " in trust for Alice O'Neill Johnson (niece)," also a plaintiff in this action. On April 1, 1938 (ten days before his death), interest was added which made the deposit total $3,007.65. On the same day the decedent withdrew $2,005.10, leaving a balance of $1,002.55 in that account. Simultaneously the deceased opened two new accounts with the money withdrawn from the Johnson account; one in his name in trust for plaintiff Gracie McCormack Nielsen in the sum of $1,002.55, and the other in his name in trust for plaintiff Margaret McCormack Galgano in the sum of $1,002.50. But, with the evident purpose of equalizing this account with the Nielsen and Johnson accounts, the decedent deposited five cents in that account at the same time, so that those three accounts were each in the sum of $1,002.55. There was no further activity in these accounts.

The deceased also had had an account in his own name in the defendant Brooklyn Savings Bank. On April 1, 1937, he withdrew the entire amount from this account and opened a new account in his own name in trust for plaintiff Elizabeth O'Neill Murray. Four entries of interest were thereafter made in the pass book, the last one on April 6, 1938, five days before the decedent's death. On that date the account had a total of $3,320.15.

The deceased had also opened an account in his own name on September 1, 1926, in the defendant Dime Savings Bank and had made regular deposits therein until February 24, 1938, when he withdrew the entire amount of $2,985.24. With this sum he opened a new account in the same bank in his name in trust for plaintiff Thomas Smith. Two subsequent small withdrawals were made from this account, and on March 21, 1938, the deceased withdrew $1,000 and opened a further new account in his name in trust for plaintiff Louis O'Neill. In this account interest was added on

April 4, 1938 (one week before decedent's death), and the balance was shown to be $1,005. In the Smith account interest was added on that same day and $35 was withdrawn simultaneously, leaving a balance of $1,874.74 in said account.

The deposits in all the defendant banks, therefore, totaled $13,411.76 on the day of decedent's death.

All of the above beneficiaries were relatives either by blood or by the deceased's former marriage. Although they showed that they were legitimate objects of the deceased's bounty, they gave no consideration for the accounts; no delivery of the pass books was made to them during the deceased's lifetime, nor were they given any control of the accounts by the deceased at any time. The plaintiffs apparently did not even know of the existence of these accounts.

The deposits and withdrawals above enumerated indicated that the deceased maintained absolute and complete control over all the accounts right up to his death. He withdrew whatever he wished to give to others or to use himself. He treated the money as his own, surrendering neither ownership nor indicia of ownership so long as he lived.

The court, in *Matter of Totten* (179 N. Y. 112, 125, 126) laid down the rules applicable to this form of deposit: " A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. *In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.*"

It is undisputed that the deceased here died before the beneficiaries and that there was no decisive declaration or act of disaffirmance. Consequently, in the absence of anything further to give the widow additional rights, the plaintiffs would come within the rule enunciated, and would be entitled to the bank balances due.

Here, however, complications arise by virtue of section 18 of the Decedent Estate Law. By that section " a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions " contained in said section.

This section prohibits a testamentary disposition of property in excess of what the widow would have been entitled to in case of

intestacy. It does not prohibit any one from transferring in good faith any or all of his property during his lifetime. The question here presented is whether these Totten trusts were transfers during the lifetime of the deceased which take precedence over section 18 of the Decedent Estate Law or whether they were, in legal contemplation, testamentary dispositions of property at the death of the decedent which must yield to the mandatory provisions of the section.

Originally, the creation of a bank account in the name of a depositor in trust for another was accorded the status of an immediate legal trust, irrespective of the retention of the res or pass book by the grantor, or lack of knowledge of the beneficiary. (*Martin* v. *Funk*, 75 N. Y. 134; *Willis* v. *Smyth*, 91 id. 297.) In a later case it was stated, by way of dictum, to be proper to admit " evidence of contemporaneous facts and circumstances constituting res gestœ, to show that the real motive of the depositor was not to create a trust, but to accomplish some independent and different purpose inconsistent with an intention to divest himself of the beneficial ownership of the fund." (*Mabie* v. *Bailey*, 95 N. Y. 206, 210.)

The Court of Appeals, in *Matter of Totten* (*supra*), reviewed these and other earlier cases in the course of its search for a definite rule to define the relationship of the parties in the case of a bank deposit by one " in trust " for another. The conclusion reached was expressed in the language hereinbefore quoted. The conclusion was based upon the intention of the depositor as gleaned from the form of the deposit (p. 124): " When a deposit is made in trust and the depositor dies intestate leaving it undisturbed, in the absence of other evidence, the presumption seems to arise that a trust was intended in order to avoid the trouble of making a will." It was that reasoning which impelled the court to regard it as " a tentative trust merely."

In commenting on this holding and case, Austin Wakeman Scott, in 43 Harvard Law Review, 521, at page 542, says: " The New York courts in dealing with savings bank trusts sometimes speak as though no trust arises until the death of the depositor. If this is so, the trust would seem clearly testamentary, since the depositor's death is a condition precedent to the creation of the trust. Apparently what is meant, however, is that a trust is created at the time of the deposit but that the trust is revocable in whole or in part by the depositor; the trust is subject to a condition subsequent of revocation rather than to a condition precedent of the death of the depositor. Even so, in view of the extent of the control of the depositor over the deposit, the trust in substance appears to be

testamentary. It is clear that a similar trust of property other than savings bank deposits would be invalid. In view, however, of the convenience of this method of disposing of comparatively small sums of money without the necessity of resorting to probate proceedings, there seems to be no sufficiently strong policy to invalidate these trusts. Not only is the amount involved usually comparatively small, but it is easy to identify, and there is no great danger of fraudulent claims resulting from the absence of an attested instrument."

In further support of the testamentary nature of Totten trusts, it is significant that such trusts are taxable as testamentary transfers. (*Matter of Kiernan*, 134 Misc. 868; affd., 227 App. Div. 782. See, also, Tax Law, § 249-r, subd. 4; 20 Cornell Law Quarterly, 381, 387; 43 Harv. Law Rev. 521, 543, footnote 58.)

That it does not, without additional proof, become an irrevocable or absolute trust upon creation, is evidenced by the many acts with or without the depositor's volition, that effectively revoke such tentative trust, viz., the withdrawal of the funds from the bank by the depositor (*Tierney v. Fitzpatrick*, 122 App. Div. 623; revd. for improper admission of evidence, 195 N. Y. 433), the showing of an intention to revoke (*Rush v. South Brooklyn Savings Inst.*, 65 Misc. 66; affd., 134 App. Div. 981), the disposing of the funds by will (*Thomas v. Newburgh Savings Bank*, 73 Misc. 308; affd., 147 App. Div. 937), the beneficiary's predeceasing the depositor (*Matter of Bulwinkle*, 107 App. Div. 331; *Matter of United States Trust Co.*, 117 id. 178; affd., on opinion below, 189 N. Y. 500). And even if such acts do not occur and the presumption of a trust arises upon the death of the depositor, evidence is admissible to show a contrary intention. (*Morris v. Sheehan*, 234 N. Y. 366.)

Without evidence showing an actual transfer *in præsenti* or the establishment of an immediate *inter vivos* trust, the right of the beneficiaries of such a trust is only inchoate and becomes absolute only at the moment of the death of the depositor. As such, it is, in substance, testamentary.

Significant are the acts of this deceased in searching out his intention: the statement that he wanted his money to go to his own people; the creation of the three trust accounts in equal amounts in the Fulton Savings Bank to take care of each of those beneficiaries without preference of one over the other; the failure to tell the beneficiaries of such accounts; the retention of possession of the pass books; the withdrawal and use of the money in the accounts. All these acts connote an intention to give the respective plaintiffs the money not immediately upon the creation of the trust but *upon his death*.

In the case of *Newman* v. *Dore* (275 N. Y. 371) the testator, three days before his death, created written trusts of all of his property (not Totten trusts) in favor of beneficiaries other than his wife. " Undoubtedly the settlor's purpose was to provide that at his death his property should pass to beneficiaries named in the trust agreement to the exclusion of his wife " (p. 375). The beneficiary brought action, after the settlor's death, to compel the trustees to carry out the terms of the trusts. The widow challenged the validity of the transfer of the decedent's property to the trustees, on the ground that it was made " for the purpose of evading and circumventing the laws of the State of New York " (¶ 10 of the answer, fol. 91, Record on Appeal in App. Div.) and " with the intention of defrauding and depriving the defendant * * * of her prospective rights as surviving spouse " (Id. ¶ 11).

The court rejected the claim that the trust was created with the intention of circumventing the law, as being immaterial and carrying no legal consequences. It also rejected as a test of validity or invalidity of the trust, the question of whether the deceased intended to defraud his widow of her lawful share. It said: " Motive or intent is an unsatisfactory test of the validity of a transfer of property " and " the only sound test of the validity of a challenged transfer is whether it is real or illusory * * * whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer " (p. 379).

While the court excludes intention to defraud the widow as a criterion of invalidity of the trust, it does not exclude such intention to defraud as a relevant circumstance to be taken into consideration in the process of determining whether the transfer is " real " or " illusory." As was stated in the discussion of the opinion in 37 Columbia Law Review, 1219, 1221: " The court refused to establish a test for an illusory transfer more definite than the intent of the conveyor to divest himself of his property in form only, which on analysis would seem to be little different from the intent to defraud. * * * Regardless of the court's assertion, it is not unreasonable to predict that the more flagrant the intent to disinherit the spouse, the more easily convinced the court will be that the transfer is ' illusory '— another manifestation of the common law tradition of protecting the widow."

Although here the claim was made that the decedent intended to defraud his wife, no such fact was proved. Despite it, however, an illusory transfer was demonstrated.

The trust agreements in *Newman* v. *Dore* provided: (1) That the settlor reserved the enjoyment of the entire income as long as

he should live; (2) that he reserved the right to revoke the trust at his will; (3) that the general powers of the trustees were " subject to the settlor's control during his life " and could be exercised " in such manner only as the settlor shall from time to time direct in writing."

The court characterized such a trust as " illusory " (pp. 377, 378 and 381): " Thus by the trust agreement which transferred to the trustees the settlor's entire property, the settlor reserved substantially the same rights to enjoy and control the disposition of the property as he previously had possessed, and the inference is inescapable that the trust agreements were executed by the settlor, as the court has found, ' with the intention and for the purpose of diminishing his estate and thereby to reduce in amount the share ' of his wife in his estate upon his death and as a ' contrivance to deprive * * * his widow of any rights in and to his property upon his death.' They had no other purpose and substantially they had no other effect. * * * Judged by the substance, not by the form, the testator's conveyance is illusory, intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed. * * * In this case it is clear that the settlor never intended to divest himself of his property. He was unwilling to do so even when death was near." Accordingly the rights of the widow were held to be paramount.

A parallel to the provisions of the trust agreement in *Newman v. Dore* may be found in the usual Totten trust, such as the one in the case at bar. The settlor, of course, is the depositor; the depositor is also the trustee (*Schluter v. Bowery Savings Bank,* 117 N. Y. 125, 128, 129; *Davlin v. Title Guarantee & Trust Co.,* 229 App. Div. 269, 270; affd., 255 N. Y. 559); the beneficiary named in the bank account occupies the same position as the beneficiary of the express trust agreement. Under a Totten trust, (1) the depositor retains the enjoyment of the entire income so long as he lives; (2) he may revoke the deposit either by notifying the depository or withdrawing all the funds, and (3) he can control his own actions as trustee in exercising his rights as depositor.

The court in *Newman v. Dore* specifically left open the question (p. 381) " whether reservation of the income or of a power of revocation, or both, might even without reservation of the power of control be sufficient to show that the transfer was not intended in good faith to divest the settlor of his property " so as " to render the conveyance more than illusory." It could not have been referring by this language to a Totten trust, because *all* the elements rendering the conveyance illusory in *Newman v. Dore, i. e.,* reser-

vation of income, power of revocation and reservation of control, are present in a Totten trust.

In so far as *Matter of Schurer* (157 Misc. 573; affd., 248 App. Div. 697); *Bodner* v. *Feit* (247 id. 119); *Matter of Clark* (149 Misc. 374); *Matter of Yarme* (148 id. 457; affd., 242 App. Div. 693) express views with respect to a Totten trust which are inconsistent with the conclusion reached in *Newman* v. *Dore* (*supra*), they must naturally yield to the opinion expressed by the highest court.

The plaintiff beneficiaries here have the burden of establishing more than the mere deposits. They must show that the deposits were intended to be valid, immediate, *inter vivos* transfers. Otherwise the presumption arising from *Matter of Totten* yields to the rights of the widow under section 18 of the Decedent Estate Law, and the funds become part of the decedent's estate.

The plaintiffs have failed to sustain such burden, and judgment must be directed for the defendant administratrix. Settle findings of fact and conclusions of law in conformity herewith.