CHASE, J. The plaintiff brought an action against the defendant. After more than 20 days had expired from the service of the summons and complaint, judgment was entered thereon by default. The defendant appeared in the action soon after it was commenced, but did not serve an answer within 20 days. After the judgment was entered the plaintiff's attorney saw the defendant and told him of the entry of judgment, and the defendant said, if the plaintiff would wait a few days and not issue execution, he would pay the judgment. The plaintiff waited a few days without issuing an execution, and the defendant then went to the plaintiff's attorney and paid the judgment and took a satisfaction thereof. This motion is founded upon two affidavits, each made by the attorney who appeared for the defendant. They do not include a copy of tne defendant's proposed answer or a sufficient affidavit of merits, and they show but slight, if any, excuse for the defendant's failure either to serve his answer in time or to have the time in which an answer could be served extended by stipulation or order. The attorney for the plaintiff by affidavit showed that the judgment had been voluntarily paid and satisfied, as stated. No affidavit by the defendant was read at the Special Term, and it does not appear that the defendant had any personal knowledge of the application to set aside the judgment and open the default. The payment and satisfaction of the judgment is in no way controverted or explained. The defendant clearly acquiesced in the judgment by the payment thereof, and it wholly ceased to exist before the motion papers were served.

The order should be reversed, with $10 costs and disbursements. All concur.

---

(107 App. Div. 331.)

In re BULWINKLE et al.

(Supreme Court, Appellate Division, Second Department. August 31, 1905.)

TRUSTS—DEPOSIT IN BANK.

    D. deposited money in a savings bank in the name of "D., in Trust for L." Without being informed thereof, L. predeceased D. Thereafter D. continued to make deposits in the account, and stated to some person that the children of L. had money in the bank, that it was in trust for their mother, but that they would eventually get it. Before the death of D. the words "in Trust for L." in the bank book were obliterated. *Held*, that the tentative trust came to an end with the death of L., and that there was no trust for her children.

    [Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, § 44.]

    Hirschberg, P. J., dissenting.

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the account and proceedings of John M. Bulwinkle and another, executors of Mary Ann Dugard, deceased. From a decree (87 N. Y. Supp. 250) settling the accounts in relation to a savings bank account, the Methodist Episcopal Hospital appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

George S. Ingraham, for appellant.
Lewis L. Fawcett, for respondent.

WOODWARD, J.  Mary Ann Dugard, the decedent, deposited in the Williamsburgh Savings Bank, on or about January 29, 1890, certain moneys in the name of "Mary Ann Dugard, in Trust for Lillie M. Lahey." There is no evidence that the said Lillie M. Lahey was ever informed of this deposit, or that she was ever given the bank book, or that any act on the part of the decedent in reference to this deposit ever came to the knowledge of the beneficiary named. With the deposit standing on the books of the bank as above stated, the said Lillie M. Lahey died on the 30th day of March, 1892, leaving her mother, the said Mary Ann Dugard, her surviving. Subsequent to the death of the said Lillie M. Lahey, Mrs. Dugard continued to make deposits in the account "in trust for Lillie M. Lahey"; such deposits aggregating $525. It appears from the evidence that, when the bank book came into the possession of the executors of Mary Ann Dugard, the words "in Trust for Lillie M. Lahey" were obliterated by pencil marks, and it was only when a demand was made upon the Williamsburgh Savings Bank for the amount of the deposit that it became known that the account upon the books of the bank was in the form of a trust. The Methodist Episcopal Hospital and the Brooklyn Methodist Episcopal Church Home, residuary legatees under the will of Mary Ann Dugard, appeal from the decree of the learned Surrogate, which holds as a matter of law that the moneys so deposited in said account prior to the death of said Lillie M. Lahey became her property and form part of her estate, and that the moneys so deposited after the death of said Lillie M. Lahey became the property of the children of said Lillie M. Lahey.

We fail to find in the record before us anything to justify these conclusions. The recent careful review of the authorities made by the Court of Appeals in Matter of Totten, 179 N. Y. 112, 71 N. E. 748, establishes the rule in this state that a deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary, without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor. Matter of Totten, 179 N. Y. 125, 126, 71 N. E. 748. In the case now before us there was no pretense that the depositor had ever notified the beneficiary, or that there was any act or declaration, aside from the mere form of the deposit, which indicated an intention of making an absolute, irrevocable trust, and, the beneficiary having pre-

95 N.Y.S.—12

deceased the depositor, it follows that the tentative trust came to
an end with the death of Lillie M. Lahey, and the fact that the bank
book which came into the hands of the executors of Mary Ann Du-
gard was altered, by obliterating the words "in Trust for Lillie M.
Lahey," is persuasive evidence that the depositor so regarded the
matter. "It may be justly said," to quote the language of the Court
of Appeals in Beaver v. Beaver, 117 N. Y. 421, 430, 22 N. E. 940,
942, 6 L. R. A. 403, 15 Am. St. Rep. 531, "that a deposit in a sav-
ings bank by one person of his own money to the credit of another
is consistent with an intent on the part of the depositor to give the
money to the other. But it does not, we think, of itself, without
more, authorize an affirmative finding that the deposit was made
with that intent, when the deposit was to a new account, unaccom-
panied by any declaration of intention, and the depositor received
at the time a pass book, the possession and presentation of which,
by the rules of the bank, known to the depositor, is made the evi-
dence of the right to draw the deposit. We cannot close our eyes
to the well-known practice of persons depositing in savings banks
money to the credit of real or fictitious persons, with no intention
of divesting themselves of ownership. It is attributable to various
reasons—reasons connected with taxation, rules of the bank limit-
ing the amount which any one individual may keep on deposit, the
desire to obtain high rates of interest where there is a discrimina-
tion based on the amount of deposits, and the desire, on the part of
many persons, to veil or conceal from others knowledge of their pe-
cuniary condition. In most cases where a deposit of this character
is made as a gift, there are contemporaneous facts or subsequent
declarations by which the intention can be established, independ-
ently of the form of the deposit. We are inclined to think that to
infer a gift from the form of the deposit alone would in the great
majority of cases, and especially where the deposit was of any con-
siderable amount, impute an intention which never existed and de-
feat the real purpose of the depositor."

If we are right in concluding that the tentative trust came to an
end with the death of Mrs. Lahey, there can be no foundation for
the further conclusion of law that the subsequent deposits in the
same account became the property of Mrs. Lahey's children. The
deposits, both before and after the death of Mrs. Lahey, belonged
to Mary Ann Dugard until she had finally disposed of them. They
were at all times in her control, and, the pass book having been al-
tered while in her possession, the account, as between the depositor
and the children of Mrs. Lahey, was in the name of Mary Ann Du-
gard individually. There is not the slightest evidence to show that
any deposit was made with an intention to transfer to Mrs. Lahey's
children the original or subsequent deposits, with the exception of
an alleged statement by Mrs. Dugard to the effect that these chil-
dren had a snug little sum in the bank, that it was in trust for their
mother, but that they would eventually get it. This was not said
to any one who had any control over the deposit. It was not a dec-
laration of a present gift to the children, and the most that can be
said for it is that it was some evidence that Mary Ann Dugard ex-

pected to turn the money over to them.  But with the deposit belonging to her she died, and it seems clear that the fund in the Williamsburgh Savings Bank belonged to her estate, and not to the heirs of Lillie M. Lahey.  No title to the original deposit ever vested in Mrs. Lahey, and it is difficult to see how any title could flow to her heirs.

The decree of the Surrogate's Court should be reversed, with costs.

JENKS, RICH, and MILLER, JJ., concur.  HIRSCHBERG, P. J., dissents.

---

(107 App. Div. 293.)

DI STEFENO v. PEEKSKILL LIGHTING & R. CO.

(Supreme Court, Appellate Division, Second Department.  August 31, 1905.)

1. MASTER AND SERVANT—EMPLOYER'S LIABILITY ACT—ASSUMPTION OF RISK —QUESTION FOR JURY.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 557, 1071–1084.]

2. SAME—NEGLIGENCE OF MASTER—EVIDENCE—QUESTION FOR JURY.

Evidence in an action for injuries received by an employé while breaking stone in a quarry, by reason of the explosion of dynamite, examined, and *held* to require the submission to the jury of the question of the master's negligence.

3. SAME—FELLOW SERVANTS.

Where, in an action for injuries received by an employé while breaking stone in a quarry, by the explosion of dynamite left in a stone, it was shown that prior to the accident the person in charge of the work for the master examined the stone, assured the employé that it was free from dynamite, and directed him where to strike, such person was not, as a matter of law, the employé's fellow servant.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 491, 1062–1066.]

Appeal from Trial Term, Westchester County.