MAY v AMERICAN SAVINGS ASSOCIATION

1. TRUSTS—TERMINATION—DEATH OF BENEFICIARY.

Courts are hesitant where a beneficiary predeceases the grantor-trustee to imply conditions of survivorship; the death of a *cestui que trust* may by the terms of the trust cause it to end, but in the absence of an express provision in the trust instrument to that effect, the trust will go on for the successors in interest of the deceased *cestui.*

2. TRUSTS—SAVINGS ACCOUNT—INTENTION—EVIDENCE—SUFFICIENCY.

The *Totten* trust doctrine is applicable to cases in which a savings account trust is established merely by the deposit of money in an account labeled "A in trust for B", and in such a case, the sufficiency of the evidence of the depositor's intention to make himself trustee is in issue; the doctrine creates a presumption that the trust is tentative only during the life of the depositor, and a corollary of the doctrine is that where the beneficiary predeceases the depositor, the tentative trust terminates ipso facto because the existence of the account alone is insufficient evidence that the depositor intended the creation of an interest *in praesenti* in the beneficiary.

3. TRUSTS—SAVINGS ACCOUNT—INTENT—WRITTEN AGREEMENT.

A grantor-trustee of a savings account by executing a written trust agreement performed an unequivocal act by which he manifested his intent to vest *in praesenti* rights to the corpus of the trust in his beneficiary; where there is a written trust agreement, the terms of that agreement control the disposition of the trust corpus.

4. TRUSTS—SAVINGS ACCOUNT—REVOCABLE TRUST—INTENTION.

A discretionary revocable express savings account trust that did not provide for the disposition of the fund in the event the

REFERENCES FOR POINTS IN HEADNOTES

[1] 54 Am Jur, Trusts § 136 *et seq.*

[2] 10 Am Jur 2d, Banks §§ 392, 395.

Manner and sufficiency of revocation of tentative [Totten] trust of savings bank account, 38 ALR2d 1234.

[3, 4] 10 Am Jur 2d, Banks § 390 *et seq.*

beneficiary predeceased the grantor-trustee is interpreted to intend that the beneficiary's interest be an asset of the beneficiary's estate where the grantor-trustee left the account untouched from the time of the beneficiary's death until his own death.

Appeal from Wayne, John D. O'Hair, J. Submitted Division 1 April 6, 1973, at Detroit. (Docket No. 14445.) Decided April 26, 1973.

Complaint by Alfred A. May, administrator of the estate of Julius Schlan, deceased, against the American Savings Association to recover trust funds. Morey Safer, Robert J. Safer, and Geraldine Wiseman intervened as defendants. Summary judgment for intervening defendants. Plaintiff appeals. Affirmed.

*May, Burston, May & Greenspan,* for plaintiff.

*Bromberg & Robinson* (by *Jeffrey R. Kravitz*), for intervening defendants.

Before: BRENNAN, P. J., and DANHOF and BASHARA, JJ.

DANHOF, J. From the trial court's entry of judgment, granting intervening defendants' motion for summary judgment and denying plaintiff's motion therefor, GCR 1963, 117.2(3), the plaintiff appeals by right. We affirm.

The relevant facts are undisputed. On January 23, 1967, decedent Julius Schlan opened a bonus savings account with American Savings Association. The account was opened in the name of Julius Schlan as trustee for Mrs. Ethel Saferstein, pursuant to Mr. Schlan's instructions. Contemporaneously, Mr. Schlan executed a trust agreement in the following form:

"DISCRETIONARY REVOCABLE TRUST
AGREEMENT

"TRUST AGREEMENT NO.    1

"The funds in the account indicated on the reverse side of this instrument, together with earnings thereon, and any future additions thereto are conveyed to the trustee as indicated for the benefit of the beneficiary as indicated. The conditions of said trust are: (1) The trustee is authorized to hold, manage, invest and reinvest said funds in his sole discretion; (2) The undersigned grantor reserves the right to revoke said trust in part or in full at any time and any partial or complete withdrawal by the original trustee if he is the grantor shall be a revocation to the extent of such withdrawal, but no other revocation shall be valid unless written notice is given to the institution named on the reverse side of this card; (3) In the event of the death, resignation, removal, or incompetence of said trustee, Ethel Saferstein is appointed successor trustee, and in the event of his death, resignation, removal, or incompetence, _____ is appointed successor trustee or in the event no successor trustee is named herein or the successor or successors die, resign, are removed, become incompetent, or fail to act, said trust shall terminate and vest in the beneficiary, his heirs or assigns; (4) This trust, subject to the right of revocation, shall continue for the life of the grantor and thereafter until the beneficiary is 64 years of age, or until his death if he dies before such age, and then the proceeds may be delivered by the association to the beneficiary, or to his heirs, or to the trustee on his behalf, and if the age of the beneficiary is not specified this trust is for twenty-one years; (5) The institution in which such funds are invested is authorized to pay the same or to act in any respect affecting such account before or after the termination of this trust upon the signature of the trustee and has no responsibility to follow the application of the funds.

"In this instrument the singular includes the plural

and the masculine includes the feminine and the neuter.

"This 23rd day of January, 1967

"[signed] *Julius Schlan* Grantor"

It should be noted that at the date of the creation of this trust, the decedent's sister, Ethel Saferstein, was already 69 years of age.

At the time of Schlan's death, on June 10, 1971, the account contained $7,185.23. However, Ethel Saferstein, the beneficiary of this savings account trust, died intestate at the age of 71 on April 9, 1970 in Denver, Colorado. No probate estate was established and no legal representative appointed.

Plaintiff-administrator initiated this action against American Savings Association to recover the trust funds. Subsequently, the children of Ethel Saferstein intervened. American Savings Association deposited the funds with the clerk of the court and withdrew from the case.

*Where the beneficiary of a discretionary revocable express savings account trust predeceases the settlor-trustee, and the agreement is silent upon the disposition of the fund in this event, and the settlor-trustee leaves the account untouched from the time of the beneficiary's death until his own death, is the estate of the beneficiary or the estate of the settlor-trustee entitled to the funds in the account?*

The issue is one of first-impression in this jurisdiction. Plaintiff's claim to the fund is based upon the failure of the trust agreement to deal with the situation where the beneficiary predeceases the grantor-trustee. He relies on the language of subsection (4) of the agreement, and in particular on the words "shall continue for the life of the grantor and thereafter * * * and then the pro-

ceeds may be delivered". It is argued that this language creates a contingent interest only in Mrs. Saferstein, conditioned upon her survival of the grantor; that when she failed to survive, the trust failed ipso facto with the trust *res* reverting to the grantor as a resulting trust. We are referred specifically to the common law of the State of New York where it has long been held that where a beneficiary predeceases the depositor of a savings account trust, the depositor's estate is entitled to the proceeds of the account. *In re Bulwinkle,* 107 App Div 331; 95 NYS 176 (1905); *In re United States Trust Company of New York,* 117 App Div 178; 102 NYS 271 (1907), *aff'd in memorandum* 189 NY 500; 81 NE 1177.

As a general rule, courts are hesitant in this area to imply conditions of survivorship. The death of the *cestui que trust* may, by the terms of the trust, cause it to end, but, in the absence of an express provision in the trust instrument to that effect, the trust will go on for the successors in interest of the deceased cestui. Bogert, Trusts & Trustees (2d ed), § 996, pp 449–450.

So-called *Totten* trusts seem to be recognized in Michigan, *Boyer v Backus,* 282 Mich 593, 617 (1937), though it is unclear whether all the ramifications of that doctrine as interpreted by the courts of New York have been adopted for purposes of Michigan jurisprudence.

Two Michigan statutes deal with such trusts. MCLA 489.713; MSA 23.540(313) and MCLA 487.702; MSA 23.302. We find them inapplicable to the case at bar because these statutes do not by their terms make payment to the beneficiary mandatory nor do they seem to apply to an account accompanied by further notice in writing of the existence and terms of the trust. Furthermore,

they seem designed more for the protection of banks and other financial institutions than as a codification of a portion of the law of trusts.

Assuming *arguendo* that the *Totten* trust doctrine is the law of this state, plaintiff's reliance thereon is nonetheless misplaced. In *In re Totten*, 179 NY 112; 71 NE 748, 752 (1904), the Court held:

"After much reflection upon the subject, guided by the principles established by our former decisions, we announce the following as our conclusion: A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

For purposes of the instant case, the most important language used by the Court in *Totten* is the reference to "some unequivocal act or declaration". In other words, the *Totten* trust doctrine is applicable to cases in which a savings account trust is established merely by the deposit of money in an account labeled *"A* in trust for *B"*. In such a case, the sufficiency of the evidence of the depositor's intention to make himself trustee is in issue. The doctrine creates a presumption that the trust is tentative only during the life of the depositor. The corollary of the doctrine is that where the beneficiary predeceases the depositor, the tentative trust terminates ipso facto because the existence of the account alone is insufficient evidence that the

depositor intended the creation of an interest *in praesenti* in the beneficiary.

An extensive analysis of the difference between a tentative trust and an express inter vivos trust is contained in *In re Vaughan's Estate,* 145 Misc 332; 260 NYS 197, 201, 204–205 (1932), where the Court stated:

"It is the nature of the 'unequivocal act or declaration,' so required, which has given rise to substantially all of the litigation on this subject since the rendering of the Totten decision. This appears especially strange, since even a cursory study of the cited cases which led to the inclusion of this portion of the statement makes it absolutely clear what the court had in mind by the language employed.

"An analysis of the cases cited as a basis for this portion of the rule merely emphasizes the basic legal fact that the rights during his life of the depositor, in a savings bank deposit made in his own name in trust for another, differ in no respect from his rights in any other property which he may possess, so far as transfer or divestment of interest is concerned.

"Any person who is possessed of personal property of value may give it to another outright by satisfying certain legally prerequisite conditions. He may also divest himself of its beneficial enjoyment, while retaining the legal title, by compliance with certain recognized legal formalities. The first process is familiarly known as a gift; the second, as a declaration of trust. No other processes for gratuitous transfer of property are known to the law, and nothing in the language of the Court of Appeals in the Totten Case gives any reasonable ground for supposition that the court, by its statements therein contained, contemplated the divestment of the beneficial rights of the settlor in a tentative trust by any other means.

*   *   *

"(5) The tentative rights of the presumptive beneficiary may be turned into vested present rights during the lifetime of the depositor, if the latter completes the gift

in his lifetime either by acts sufficient to constitute a valid gift inter vivos, or to effect the erection of a present trust.

"The legal prerequisites to both have been clearly defined in innumerable authoritative determinations, and are not open to the least conjecture."

In the instant case, Julius Schlan, by executing a written trust agreement performed an unequivocal act by which he manifested his intent to vest *in praesenti* rights to the corpus of the trust in his sister. Where there is a written trust agreement, the terms of that agreement control the disposition of the trust corpus. See *In re Estate of Anderson,* 69 Ill App 2d 352; 217 NE2d 444, 449 (1966), where the *Totten* doctrine was found inapplicable.

In the case at bar, the written trust agreement does not specifically deal with a situation in which the beneficiary predeceases the grantor. The case is closely analogous to, if not indistinguishable from, *Sherman v Hibernia Savings & Loan Society,* 129 Cal App (Supp) 795; 20 P2d 138 (1933). There the trust was also completely revocable by the grantor-depositor who retained the right to make additions and withdrawals during his lifetime. The Court held that the burden was on the administrator of the grantor to show revocation or to produce evidence inconsistent with the manifest intent to create a trust. The Court found no such evidence and directed the funds on deposit to be given to the heirs of the beneficiary. The *Sherman* decision is cited in Bogert, Trusts & Trustees (2d ed), § 47, p 369, for the proposition that where a depositor has decisively shown his trust intent before the beneficiary's death, as by an express statement in a formal application to the bank, then the death of the beneficiary has no probative effect with regard to the reality of the trust intent.

The beneficial interest of Ethel Saferstein was expressly conditioned upon the absence of revocation by the grantor. But this fact alone does not mean that this Court should imply another and distinct condition, that of survival of the grantor. Though contingent, Ethel Saferstein's interest was transferable and became upon her death an asset of her estate.

The result reached is not incompatible with a construction of the trust agreement, the form of which seems to be widely used. Subsection (4) can naturally be read as providing that the trust, subject to the right of revocation, shall exist during the lifetime of Julius Schlan, the grantor, and thereafter until Ethel Saferstein should reach 64 years of age or until her death should she die before age 64. Since Ethel Saferstein was 69 years of age at the time the trust was created, one interpretation of subsection (4) is that the trust should terminate upon the death of Julius Schlan. The reference to the beneficiary attaining the age of 64 was made by Mr. Schlan in his own handwriting, because (1) the form agreement seems to require that the blank be filled in, and (2) Mr. Schlan did not anticipate being predeceased by his sister. It was his intent that, upon his death, since his sister was already passed the age of 64, that she be given the funds in the account absolutely, subject to no conditions. Upon her death, any funds remaining were to go to her successors in interest.

The children of Ethel Saferstein claim to be her sole successors in interest. This point was evidently resolved in their favor for purposes of their right to intervene. GCR 1963, 209.1(4). However, distribution of the fund should await judicial de-

termination to that effect according to the appropriate probate procedure.

Affirmed. Costs to the intervening defendants.

All concurred.