*In re* ESTATE OF CHARLES CAPOCY, Deceased.—(SAM IZZI, Adm'r of the Estate of Charles Capocy, Appellee, *v.* HEIRS OF JOSEPHINE PIPER *et al.*, Appellants.)

First District (1st Division)    No. 80-2890

Opinion filed December 14, 1981.

Paul V. Kaulas, of Chicago (Rory Cassidy, of counsel), for appellants Heirs of Josephine Piper.

Jaros, Tittle & O'Toole, of Chicago (Thomas A. Rosiello and Joseph J. Jaros, Jr., of counsel), for appellant Talman Home Federal Savings and Loan Association of Illinois.

Daniel A. Riley, of Riley, Riley and Riley, of Hickory Hills, for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:
This appeal involves disposition of the assets of a savings account

trust executed by Charles Capocy (settlor) for the benefit of his niece, Josephine Piper, and deposited at Talman Federal Savings and Loan Association of Illinois (Talman). Upon motion of the independent administrator of the settlor's estate, the trial court directed Talman to release the proceeds of the account to the administrator for distribution to the Capocy heirs. Talman and the heirs of Josephine Piper appeal.

The savings account in question was opened on October 5, 1976. The account was in the name of the settlor as trustee for the benefit of Josephine Piper (beneficiary). Concurrent with the opening of the account, settlor executed a form trust agreement. The settlor made several deposits and withdrawals but never revoked nor modified the trust agreement or the savings account. The front of the trust agreement identified the settlor. The reverse side, also signed by the settlor, provided:

### "TRUST AGREEMENT

The funds in the account identified on the reverse side hereof, together with earnings thereon, and any future additions thereto, are by these presents hereby assigned, transferred, conveyed and delivered to the trustee (identified on reverse side) for the benefit of the beneficiary or beneficiaries named (on reverse side). The conditions of said trust are: (1) The trustee is authorized to hold, manage, invest and re-invest said funds in his sole discretion; (2) The undersigned Settlor reserves the right to revoke said trust in part or in full at any time, and any partial or complete withdrawal by the original trustee, if he is the Settlor, shall be a revocation to the extent of such withdrawal, but no other revocation shall be valid unless written notice by the Settlor is given to the Association; (3) This trust, subject to the right of revocation, shall continue for the life of the Settlor, and thereafter as hereinafter specified: (a) If, upon the death of the Settlor, the beneficiary has reached his legal majority, the trust shall terminate and the proceeds delivered to the beneficiary; (b) If, upon the death of the Settlor, the beneficiary has not reached his legal majority, then the legally appointed guardian of the estate of the beneficiary, shall act as successor trustee hereunder for the support, education and maintenance of the minor, provided, however, if the balance of funds accountable to the minor be less than $1,000.00 any adult with whom the minor resides may act as successor trustee, upon application to and acceptance of such adult by the Association; said successor trustee shall, in addition to his powers to administer this trust as successor trustee, have the full power to terminate this trust and take possession of the funds as Guardian (or Custodian if under $1,000 provision applies) of the minor beneficiary's estate, and the receipt

of such guardian shall be a complete discharge to the Association. In any event, this trust shall terminate and the proceeds shall be delivered to the beneficiary when he reaches his legal majority, subject to the condition precedent that the Settlor is then deceased; (4) Two or more named beneficiaries shall have equal interests, one such share for each beneficiary living at the time of distribution. If any beneficiary shall die before distribution, his interest shall abate and be paid on an equal basis to the surviving beneficiaries unless such deceased beneficiary shall have one or more descendants then living, in which case the deceased beneficiary's share shall be divided, per stirpes, among said descendants. The word descendants, as used herein, shall include those persons legally adopted into such status as well as those born therein. If, upon the death of the Settlor, there should be a complete failure of the beneficiaries of this trust, then the funds shall be considered owned in their entirety by the Settlor and shall be part of his estate; (5) The original trustee is authorized at the discretion of said trustee, to delegate by written power of attorney, an attorney in fact to act on behalf of said trustee and upon any such appointment, the Association is authorized to act with respect to the account upon the signature of either the trustee or the attorney. Any such power granted shall terminate upon written notice to the Association by the trustee, or upon the death or incompetency of the original trustee, and the provisions of this trust shall govern the disposition of the funds; (6) The Association is authorized to pay the same or act in any respect affecting said account before or after the termination of this trust upon the signature of the trustee or successor trustee, or any attorney in fact, and has no responsibility to follow the application of the funds.

In this instrument, the singular includes the plural and the masculine includes the feminine and the neuter.

Dated __10/5/76__        Settlor __Charles Capocy__."
On November 14, 1979, the beneficiary died leaving five heirs. Approximately 4½ months later, on March 26, 1980, the settlor died. The question before this court is whether the proceeds of this account become part of the estate of the settlor, or that of the beneficiary.

Initially, the administrator of the settlor's estate suggests the savings account trust is a "Totten" trust. *In re Totten* (1904), 179 N.Y. 112, 125-26, 71 N.E. 748, 752, first recognized the type of property disposition now referred to as a "Totten trust."

"A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevo-

cable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary."

Because generally the beneficial interest in a Totten trust does not vest until the death of the settlor, the general rule developed in other jurisdictions (the issue has apparently not yet arisen in Illinois) that if the beneficiary predeceases the settlor, the trust fails and the corpus of the trust reverts to the estate of the settlor. See, *e.g., Hyman v. Tarplee* (1944), 64 Cal. App. 2d 805, 149 P.2d 453; *In re Estate of Ungara* (1944), 183 Misc. 907, 51 N.Y.S.2d 386; *In re Bulwinkle* (1905), 107 App. Div. 331, 95 N.Y.S. 176; *United States v. Williams* (D.N.J. 1958), 160 F. Supp. 761; also, Annot., 64 A.L.R.3d 221, 223 (1975), and cases there cited; note, *Illinois Totten Trusts*, 48 Chi-Kent L. Rev. 107 (1971).

However, in the case at bar, the savings account trust is not a Totten trust. As we stated in *In re Estate of Anderson* (1966), 69 Ill. App. 2d 352, 363, 217 N.E.2d 444:

"In the case before us, we have more than mere accounts in the name of the depositor as trustee. We have the specific trust declarations containing definite terms and provisions regarding the deposit and disposition of funds and the change, alteration, modification and termination of the trust. These trust accounts, therefore, cannot be considered 'Totten or tentative' trusts but, * * *, they are express inter vivos trusts."

See also *In re Estate of Petralia* (1965), 32 Ill. 2d 134, 204 N.E.2d 1.

██ The language of the instant trust agreement evidences intent to establish an immediate trust. The agreement opens with the language: "The funds in the account identified on the reverse side hereof * * * are by these presents hereby assigned, transferred, conveyed, and delivered to the trustee * * * for the benefit of the beneficiary or beneficiaries named (on reverse side)." The agreement expresses no condition or requirement that the beneficiary survive the settlor. On the contrary, the trust becomes operative immediately upon execution. Thus, the trust is not "tentative" but is rather a valid, revocable *inter vivos* trust. Therefore, any rule governing the disposition of Totten trusts is inapplicable here.

In what appears to be the most recent analogous case, the appellate court of Michigan reached the same conclusion. In *May v. American Savings Association* (1973), 46 Mich. App. 668, 675, 208 N.W.2d 619, 623, the court held a savings account trust coupled with the execution of a form trust agreement established a valid *inter vivos* trust. Furthermore, the court held that when the beneficiary predeceases the settlor, the corpus of the trust becomes part of the estate of the beneficiary unless

that disposition is incompatible with the language of the trust agreement. The court reasoned:

> "The beneficial interest of [the beneficiary] was expressly conditioned upon the absence of revocation by the grantor. But this fact alone does not mean that this Court should imply another and distinct condition, that of survival of the grantor. Though contingent, [the beneficiary's] interest was transferable and became upon her death an asset of her estate." 46 Mich. App. 668, 676, 208 N.W.2d 619, 623.

The same result was reached by the appellate court of California 40 years earlier in *Sherman v. Hibernia Savings & Loan Society* (1933), 129 Cal. App. Supp. 795, 20 P.2d 138. See also *Randall v. Bank of America National Trust & Savings Association* (1941), 48 Cal. App. 2d 249, 119 P.2d 754.

■■ We agree with the courts of California and Michigan. We conclude that if the beneficiary of a revocable *inter vivos* savings account trust predeceases the settlor, upon death of the settlor, the corpus of the trust will pass to the estate of the beneficiary. This presumption will not govern if the settlor amends or revokes the trust during his lifetime, or if the language of the trust agreement indicates an alternate distribution. In the case at bar, the settlor clearly never revoked the trust. Therefore, we must look to the pertinent language of the trust agreement.

The only arguably relevant provision of the trust agreement is section (4) above quoted. The parties disagree as to the relevance and interpretation of this language.

The heirs of the beneficiary contend the provision applies only when at least two beneficiaries are designated in the trust and here the settlor named only one beneficiary. Talman urges the provision does apply to the instant situation, and accordingly interprets the language as establishing the descendants of the beneficiary as a class of contingent beneficiaries. Thus, the contingent interest of the heirs of the designated beneficiary became vested upon her death before the death of the settlor.

The administrator of the settlor's estate agrees with Talman's co-appellant, the heirs of the deceased beneficiary, that the provision does not apply where a single beneficiary is named. The settlor's administrator argues the agreement did not establish a class of contingent beneficiaries and, absent clear intent of the settlor to the contrary, the trust terminated upon the death of the beneficiary. Implicit in this argument is the assumption that the beneficiary's interest was conditioned upon her surviving the settlor.

We believe the issue of applicability of section (4) of the trust agreement is irrelevant. In either event the proceeds of the trust become

the property of the heirs of the beneficiary. Assuming the provision is not applicable, upon perusal of the entire trust agreement (*2416 Corp. v. First National Bank* (1980), 91 Ill. App. 3d 961, 977, 415 N.E.2d 420), we conclude the corpus of the trust became part of the beneficiary's estate. We disagree with the argument of the settlor's administrator that the trust implied the condition the beneficiary survive the settlor for her interest to vest. The language of the trust agreement indicates the intention immediately to transfer the interest in the trust corpus. The trust agreement specifies no conditions precedent for the vesting of a beneficiary's interest. Therefore, we conclude the beneficiary's interest became vested immediately upon the execution of the trust instrument, so that it was an inheritable part of the beneficiary's estate.

Alternatively, assuming provision (4) is applicable, we believe the language specifies the descendants of a named beneficiary should take the beneficiary's interest if the beneficiary predeceases the settlor. In our opinion, the death of the only named beneficiary leaving surviving heirs does not constitute the "complete failure of beneficiaries" specified in the final sentence of the paragraph.

For these reasons the judgment appealed from is reversed and the cause is remanded with directions that the trust estate and all avails thereof shall pass to the estate of the deceased beneficiary.

Reversed and remanded with directions.

McGLOON and O'CONNOR, JJ., concur.