# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF DONNA M. MOORE.

---

LAURETTE M. LEMIEUX-CLEMENS, Personal
Representative of the ESTATE OF DONNA M.
MOORE, and HUNTINGTON NATIONAL
BANK,

        Appellees,

v

BETHEL TEMPLE CHURCH,

        Appellant.

UNPUBLISHED
October 18, 2018

No. 338553
Macomb Probate Court
LC No. 2016-221128-DE

---

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Appellant Bethel Temple Church appeals as of right the probate court's determination that a bank account held by the decedent with appellee Huntington National Bank is an asset of the probate estate rather than a nonprobate asset with Bethel Temple as the beneficiary. Bethel Temple also appeals the probate court's decisions not to permit additional discovery and to discharge Huntington from liability with respect to interpleaded funds. We affirm.

## I. FACTS

The decedent, Donna M. Moore, died on March 24, 2016, and the probate court appointed her niece and only surviving heir at law, appellee Laurette M. LeMieux-Clemens, as personal representative of the estate. The present appeal concerns the disposition of a certificate of deposit in the amount of $75,427.47 held by Moore in an account she opened with Huntington National Bank on February 25, 2011 (the "CD account"). Two signature cards exist relating to Moore's opening of the CD account. The first signature card, found among Moore's papers after her death, is dated February 25, 2011, but is unsigned (the "unsigned card"). The unsigned card indicates that the CD account is designated "ITF," or "in trust for," and names Bethel Temple Church as the beneficiary. The second signature card, which was on file with Huntington, is also dated February 25, 2011, and is signed (the "signed card"). However, the beneficiary

-1-

designation field on the signed card is left blank. The portions of the signed card identifying Moore's name and account information are handwritten, and a handwritten X appears at the beginning of Moore's signature.

Bethel Temple, relying on the unsigned card designating it as the beneficiary, and LeMieux-Clemens, relying on the signed card designating no beneficiary, advised Huntington of their competing claims to the CD account. Given that Huntington had no records enabling it to conclusively determine whether Moore intended to designate Bethel Temple as the beneficiary of the CD account, Huntington filed a petition for interpleader and instructions with the probate court. Subsequently, LeMieux-Clemens filed a petition seeking a determination that the CD account was an asset of the estate. The probate court granted Huntington's petition for interpleader and entered an order instructing it to deposit $75,427.47 with the county treasurer. It is undisputed that Huntington deposited the funds and, pursuant to the probate court's order, was discharged of liability with respect to those funds.

On December 21 and December 22, 2016, the probate court held a bench trial regarding the disputed CD account. The probate court heard testimony from, among other witnesses, Chastity Dupure, the personal banker who worked at Huntington and assisted Moore with opening the CD account. Though Dupure did not specifically recall meeting with Moore in 2011, she testified regarding her routine practices and the ordinary course of business at Huntington. Dupure stated that preprinted signature cards similar to the unsigned card were automatically generated by Huntington's computer system upon the opening of an account. Dupure further explained that if Huntington did not have record of a signed signature card, she would have been notified and would have corrected the issue by handwriting a new signature card and mailing it for the client's signature:

> [Huntington] would send an error, me an error report that I don't have a document. I would hand write a document and I would send it out. Generally, that's why I would mark an X this big, so they understood where it was looking for a signature. And I would put the date of account opening at the top.

Based on this practice, Dupure repeatedly testified that she believed the unsigned card was created before the signed card. However, she was unable to determine the duration of time that elapsed between the creation of the unsigned card and Moore's execution of the signed card.

The probate court also admitted evidence that Moore executed and signed a living trust document on June 25, 2014. The probate court stated on the record that the living trust set forth various specific devises and that Bethel Temple was designated as the residuary beneficiary. However, although the living trust stated it was to be funded with assets transferred to the trust by Moore, the parties were unable to locate any documents transferring funds. Accordingly, the probate court determined that the living trust was unfunded.

At the conclusion of the bench trial, the probate court announced on the record its decision that the CD account was an asset of the probate estate, as the signed card did not leave a beneficiary. The probate court further held that the CD account was not an asset of the unfunded living trust because no documents existed transferring the CD account, or any other funds, to the trust. In reaching this conclusion, the probate court reasoned,

I fully believe that at one point Donna Moore must have told, did tell Chastity Nowicki [Dupure] – her name then, that she wanted Bethel Temple Church to be the beneficiary of this account. And that some time after that Chastity met with Donna Moore and there was presented to her a different signature card in which there is no beneficiary designation. The most logical explanation for that is that Donna M. Moore made a conscious decision that her prior thought of having Bethel Temple Church being added as the beneficiary is no longer what she wanted to do, for whatever reason, and we don't know what reason. But in terms of the written record, Donna M. Moore signs a document, and the only one that she signs, and it comes after the original document, saying forget about Bethel Temple Church, I have no beneficiary designation.

Thus, the probate court found that the signed card with no beneficiary designation was controlling in the absence of sufficient evidence demonstrating Moore's contrary intent.

Bethel Temple thereafter filed a motion for reconsideration and for a new trial, arguing that newly discovered evidence – namely, an affidavit by Dupure regarding Huntington's recordkeeping procedures – demonstrated that Huntington failed to produce all records concerning the CD account. On February 8, 2017, the probate court denied Bethel Temple's motion for reconsideration but permitted further discovery regarding Huntington's records. The parties conducted additional discovery through May 3, 2017. No further records impacting the probate court's decision were discovered. Thus, the probate court determined that no additional discovery was warranted and reaffirmed its previous decision that the evidence was insufficient to prove, under either a preponderance or a clear and convincing standard, that Moore intended to designate Bethel Temple as the beneficiary of the CD account.

## II. ANALYSIS

### A. ENTITLEMENT TO THE FUNDS

On appeal, Bethel Temple challenges the sufficiency of the evidence supporting the probate court's determination, arguing that the overwhelming weight of the evidence demonstrates Moore's intent to designate Bethel Temple as beneficiary of the CD account. We disagree.

A trial court's findings of fact in a bench trial are reviewed for clear error. *Prentis Family Fund v Karmanos Cancer Institute*, 266 Mich App 39, 59; 698 NW2d 900 (2005). "A factual finding is clearly erroneous if there is no substantial evidence to sustain it or if, although there is some evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172-173; 848 NW2d 95 (2014). A trial court's conclusions of law are reviewed de novo. *Chelsea Inv Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010).

The present case concerns entitlement to the CD account, which the unsigned card indicates was designated as an "ITF," or "in trust for," account. Bank account trusts, commonly referred to as Totten trusts,[1] are created when a deposit is made with a bank in the depositor's own name "in trust for" another named person or entity. 1 Restatement Trusts, 3d, § 26, p 420; see also *In re Kostin*, 278 Mich App 47, 55; 748 NW2d 583 (2008). In making a deposit in this manner, "[t]he depositor's intention may be to create a trust or not to create a trust." 1 Restatement Trusts, 3d, § 26, p 420. If the depositor intends to create a trust, a presumption arises that the trust is tentative, or revocable, during the life of the depositor. *May v Safer*, 46 Mich App 668, 673; 208 NW2d 619 (1973). Upon the depositor's death, the beneficiary is entitled to any funds then remaining on deposit pursuant to MCL 487.702(1), which provides,

> [i]f a deposit of money shall be made in a bank or trust company by a person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the bank, if the trustee dies, . . . the deposited money, together with the dividends or interest on the money, shall be paid to the person for whom the deposit was made.

"In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor." *In re Kostin*, 278 Mich App at 53. Intent is to be gleaned from the plain language of the trust document itself, as courts are reluctant to supplement clear language with extrinsic information. *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985). Only if the trust document is ambiguous may a court "look outside the document in order to carry out the settlor's intent and . . . consider the circumstances surrounding the creation of the document and the general rules of construction." *In re Kostin*, 278 Mich App at 53, citing *In re Butterfield Estate*, 418 Mich 241, 259; 341 NW2d 453 (1983). Patent ambiguity exists in a trust or will if "uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language," while latent ambiguity exists when "the language and its meaning is clear, but some extrinsic fact creates the possibility of more than one meaning." *In re Woodworth Trust*, 196 Mich App 326, 328; 492 NW2d 818 (1992).

When Moore opened the CD account on February 25, 2011, two signature cards – the unsigned card and the signed card – were generated. No record of the unsigned card existed within Huntington's files; rather, the only copy was discovered among Moore's papers. The unsigned card names Bethel Temple as the potential account beneficiary and states, "By signing below you establish this account in trust for the beneficiary or beneficiaries that you name." However, the unsigned card remains unexecuted, bearing no signature or other indication that it represents a final expression of Moore's intent with respect to her choice of beneficiary. Additionally, the CD account is governed by Huntington's Deposit Account Agreement and Terms, which provide as follows:

---

[1] Totten trusts are so named for the leading case establishing their validity, *Matter of Totten*, 179 NY 112; 71 NE 748 (1904).

We may allow your account to be made payable on death ("POD"), if all of the account owners are natural persons *and all of such persons sign the POD agreement on the signature card for this account.* Any change of designated payees in the POD agreement *must be signed* by all account owners and delivered to us on a special form we will give you. [(Emphasis added).]

Thus, in order for an account to be payable on death or in order to modify the designated beneficiary, the account owner must sign the signature card.

The second signature card bearing Moore's signature was discovered within Huntington's records. By executing the signed card, Moore formally applied for the account, made various certifications, and agreed to be bound by Huntington's rules, regulations, and terms and conditions. A portion of the signed card clearly marked "BENEFICIARY DESIGNATION" instructs the account holder to indicate the intended beneficiary's name and address, to provide a separate signature confirming the beneficiary designation, and to check applicable boxes for "Payable on Death Agreement" or "Deposit in Trust" options. The entirety of this section remains blank.

The signed card is unambiguous and clearly reflects that Moore made no beneficiary designation. Because the signed card bears Moore's signature, it is the only document she appears to have intended to be given effect. Further, Dupure's repeated testimony establishes that the signed card was likely executed after the unsigned card was generated. Accordingly, the signed card represents the final and most recent expression of Moore's intent with respect to the CD account. It is therefore to be given effect. See, e.g., *In re Kostin*, 278 Mich App at 58 (where the decedent executed a living trust designating her niece as the sole beneficiary and thereafter created several Totten trusts designating her daughter as the sole beneficiary of the accounts, the subsequent "creation of the Totten trusts was a revocation of the 1997 [living] trust, as far as it relates to the Totten trust properties.").

Bethel Temple contends that Moore clearly intended to designate a beneficiary given the fact that the CD account was an ITF account, which Dupure testified are typically held in trust for a beneficiary. However, the mere fact that Moore created an ITF account does not necessarily imply that she intended to create a trust or designate a beneficiary; indeed, any trust she created would have been revocable during her lifetime. See 1 Restatement Trusts, 3d, § 26, p 420. Bethel Temple also argues that the probate court failed adequately to consider Dupure's testimony that Moore executed the signed card only to correct a defect or error in the unsigned card. We disagree. The probate court properly limited Dupure's testimony to her routine practices and the ordinary course of business at Huntington, as she testified that she had no specific recollection either of Moore or of opening the CD account. See MRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Dupure's testimony is therefore immaterial with respect to Moore's intent to designate a beneficiary, either upon opening the CD account or upon executing the signed card. Additionally, Dupure agreed that it was possible that, in executing the signed card, Moore reconsidered her initial designation of Bethel Temple as the beneficiary. Thus, we conclude that Dupure's testimony does not reveal any latent ambiguity with respect to the lack of beneficiary designation on the signed card.

Bethel Temple also contends that the probate court erred in declining to admit into evidence Moore's living trust document. Bethel Temple is mistaken in its premise. Although the probate court initially declined to admit the living trust document, the court later stated on the record, "If I didn't admit it before I'm admitting it now, subject to my cautionary instructions that I've placed earlier." However, to the extent that Bethel Temple relies on the living trust document as evidence of Moore's overall estate plan, this position also fails. The parties have produced no documents transferring any assets, let alone the CD account, into the living trust; as such, the probate court did not err in concluding that the living trust is unfunded. We thus find that the living trust is neither dispositive of the CD account nor relevant to Moore's overall estate plan. In the absence of any patent or latent ambiguity, we decline to construe the signed card in such a manner as to rewrite its clear and unambiguous language designating no beneficiary of the CD account. See *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005), quoting *In re Allen Estate*, 150 Mich App 413, 416; 388 NW2d 705 (1986) (" '[a] court may not construe a clear and unambiguous [trust] in such a way as to rewrite it . . . .' ").

Accordingly, in light of our conclusion that Moore made no beneficiary designation with respect to the CD account, we affirm the probate court's ruling that the CD account is an asset of Moore's estate.

## B. DISCOVERY

Next, Bethel Temple argues that the probate court erred in denying Bethel Temple further discovery in light of information discovered during the post-judgment proceedings. We disagree. The probate court's grant or denial of a discovery motion is reviewed for an abuse of discretion. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). An abuse of discretion occurs "when the [probate] court's decision is outside the range of reasonable and principled outcomes." *Id*.

At the outset of the present dispute, the probate court entered an order on October 24, 2016, permitting 60 days of discovery. Following the conclusion of the bench trial on December 22, 2016, the probate court stayed its decision for 21 days to permit Bethel Temple an opportunity to search its records for any material documents relating to the CD account. Bethel Temple subsequently filed a motion for reconsideration and for a new trial. On February 8, 2017, the probate court denied the motion for reconsideration but permitted further discovery into Huntington's records. The parties conducted discovery over the following 84 days, through May 3, 2017.[2] The probate court conducted a hearing regarding Bethel Temple's motion for a new trial on May 9, 2017. During the hearing, Bethel Temple requested a continuance and

---

[2] During a deposition taken on May 3, 2017, a Huntington representative gave extensive testimony regarding her thorough search of the bank's electronic and paper records. In spite of these efforts, she testified that no further documents regarding the CD account were discovered. The only additional document produced was a screenshot of Huntington's internal, web-based record of the CD account, which was referenced in Huntington's petition for interpleader. The screenshot identifies Moore as the primary owner of the CD account and names Bethel Temple as the beneficiary.

suggested that Huntington was in possession of additional unproduced records. However, the probate court determined that no further discovery was warranted.

On appeal, Bethel Temple contends that remand of the case for further discovery is appropriate based on the screenshot of Huntington's internal record naming Bethel Temple as the designated beneficiary. This argument has no merit. The probate court afforded Bethel Temple ample opportunity to obtain discovery from Huntington. Though the screenshot was not produced until after the bench trial, Huntington acknowledged in its petition for interpleader that one of its computer records reflected that Moore may have intended to designate Bethel Temple as her beneficiary. Bethel Temple also maintains that remand for additional discovery is warranted in light of Huntington's failure to locate the unsigned card within its records. As recognized by the probate court, there are numerous potential explanations for Huntington's inability to locate this document, including that it was lost or never became part of the CD account record. Ultimately, however, Huntington has provided extensive sworn testimony describing the manner in which its records were searched and has certified that it possesses no further records relating to the CD account. Bethel Temple has thus failed to demonstrate any likelihood that additional discovery would yield support for its position. We conclude that the probate court did not abuse its discretion in holding that additional discovery was not warranted, as it would not be fruitful in producing any further documents.

## C. HUNTINGTON'S INTERPLEADER

Finally, Bethel Temple argues that the probate court erred in granting Huntington's petition for interpleader and instructions insofar as it ordered that Huntington was discharged from liability with respect to the interpleaded funds. Again, we disagree.

As a preliminary matter, Huntington contends that this Court lacks jurisdiction to review the probate court's October 24, 2016 order granting Huntington's petition for interpleader, as it maintains that Bethel Temple's attempt to appeal this order is untimely. We agree. Whether a court has subject-matter jurisdiction over a claim is a question of law to be determined de novo. *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). Indeed, the issue of subject-matter jurisdiction may be raised at any time, and " 'a court at all times is required to question sua sponte its own jurisdiction.' " *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 574; 692 NW2d 68 (2004), quoting *Straus v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999).

Under MCR 5.801(A)(2)(cc), orders granting or denying a petition for instructions are appealable to this Court as a matter of right. However, MCR 7.204(A)(1)(a) provides that an appeal as of right in a civil action must be filed within 21 days after entry of the judgment or order appealed from. Failure to timely file an appeal as of right in accordance with this provision deprives the Court of jurisdiction to consider the appeal. *Chen v Wayne State Univ*, 284 Mich App 172, 193-194; 771 NW2d 820 (2009); see also MCR 7.204(A) ("The time limit for an appeal of right is jurisdictional.").

On September 9, 2016, Huntington filed its petition for interpleader and instructions with the probate court. Thereafter, on October 3, 2016, LeMieux-Clemens filed a separate petition to

include the CD account in the probate estate. The probate court granted Huntington's petition for interpleader and instructions on October 24, 2016, in an order which stated in relevant part,

> [U]pon deposit of the net funds [of $75,427.47] with the Clerk of the Court, Huntington is discharged from liability as to those funds only under MCR 3.603(B). A party is not otherwise restricted from bringing a claim against the Bank other than as to the funds.[3] Huntington need not further participate in these proceedings other than to respond to any duly issued discovery requests as if it were a party, and

> IT IS FURTHER ORDERED that all parties with notice of this order are hereby restrained from commencing or prosecuting another action against Huntington regarding the subject matter of this interpleader petition.

After discovery concluded, the probate court considered and resolved LeMieux-Clemens' petition to include the CD account in the probate estate during the bench trial and in the resulting order entered on December 22, 2016. On May 9, 2017, the probate court entered an order denying further discovery, denying Bethel Temple's motion for a new trial, and reaffirming its order of December 22, 2016. Bethel Temple's claim of appeal filed on May 26, 2017, identifies the probate court's May 9, 2017 order as the order appealed. It does not expressly appeal the probate court's October 24, 2016 order regarding Huntington's petition for interpleader.

Not only has Bethel Temple failed to appeal the probate court's October 24, 2016 order within 21 days of its entry, but it has failed to appeal the order at all. Because Bethel Temple failed to identify in its claim of appeal the probate court's October 24, 2016 order granting Huntington's petition for interpleader, it has not formally appealed this order. See MCR 7.204(D)(1) (requiring that an appellant specify the judgment or order appealed, as well as the date of the judgment or order). Parties are generally permitted to raise issues on appeal relating to other non-final orders in the case. *Dean v Tucker*, 182 Mich App 27, 31; 451 NW2d 571 (1990). However, the probate court's October 24, 2016 order was final with respect to Huntington's petition for interpleader, while its May 9, 2017 order was final with respect to LeMieux-Clemens's entirely independent petition. We thus find that this Court lacks jurisdiction over Bethel Temple's challenge to the probate court's October 24, 2016 order granting Huntington's petition for interpleader.

Even if this Court had jurisdiction over this issue, we would find no merit in Bethel Temple's appeal concerning Huntington's interpleader. Bethel Temple argues that the probate court's discharge of Huntington from liability was improper, as Huntington is liable for allegedly mismanaging the CD account. Because this issue presents a legal determination, we review it de novo. *Chelsea Inv Group*, 288 Mich App at 250. In an interpleader action, "[t]he court may order the property or the amount of money as to which the plaintiff admits liability to be deposited with the court or otherwise preserved," and thereafter may order the plaintiff discharged from liability as to that deposited property. MCR 3.603(B). That procedure is

---

[3] This full sentence was handwritten in the margin of the order.

precisely what occurred in the present case, and Huntington's liability was expressly discharged only with respect to entitlement to the interpleaded funds. Bethel Temple fails both to advance any legal authority in support of its position and to articulate how any potential claims regarding Huntington's alleged mismanagement of the CD account would be impacted by a discharge from liability limited to a claim upon the interpleaded funds. This argument therefore lacks merit.

Finally, Bethel Temple contends that the probate court erred in failing to assess sanctions, including payment of Bethel Temple's attorney fees, for Huntington's alleged obstruction and withholding of discovery. In support of this argument, Bethel Temple provides no specific citation to the record but urges this Court to review the May 3, 2017 deposition transcript of Huntington's representative, as well as the probate court records generally. A probate court's decision whether to impose discovery sanctions is reviewed by this Court for an abuse of discretion. *Local Area Watch v Grand Rapids*, 262 Mich App 136, 147; 683 NW2d 745 (2004).

As discussed above, we find that Huntington complied with Bethel Temple's discovery requests insofar as it produced all relevant documents in its possession. We therefore agree with the probate court's assessment that no further discovery would lead to the production of additional material documents. Moreover, Bethel Temple's expectation that this Court will uncover in its review of the record support for Bethel Temple's position is contrary to the basic principles of appellate practice:

> A party may not leave it to this Court to search for authority to sustain or reject its position. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. Argument must be supported by citation to appropriate authority or policy. An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) (quotation marks and citations omitted).]

Accordingly, we find that the probate court did not abuse its discretion in declining to impose sanctions, including payment of Bethel Temple's attorney fees, against Huntington.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola